UNITED STATES, Appellee

v.

Allyssa K. SIMMERMACHER, Hospital Corpsman Third Class
U.S. Navy, Appellant

No. 14-0744

Crim. App. No. 201300129

United States Court of Appeals for the Armed Forces

Argued February 25, 2015

Decided June 8, 2015

ERDMANN, J., delivered the opinion of the court, in which BAKER, C.J., and STUCKY, RYAN, and OHLSON, JJ., joined.

Counsel

For Appellant:  Lieutenant Ryan W. Aikin, JAGC, USN (argued).

For Appellee:  Captain Cory A. Carver, USMC (argued); Lieutenant Commander Keith Lofland, JAGC, USN, and Brian K. Keller, Esq. (on brief); Captain Matthew M. Harris, USMC.

Military Judge:  Charles Hale

**This opinion is subject to revision before final publication**.

Judge ERDMANN delivered the opinion of the court.

Contrary to her pleas, a panel of officer and enlisted members sitting as a general court-martial convicted Hospital Corpsman Third Class (E-4) Allyssa Simmermacher of wrongfully using cocaine and making a false official statement, in violation of Articles 112a and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 907. Simmermacher was sentenced to a reduction to E-3 and a bad-conduct discharge. The convening authority approved the sentence as adjudged and the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and sentence.

When evidence is lost or destroyed, Rule for Courts-Martial (R.C.M.) 703(f)(2) sets forth the criteria and process a military judge must follow in deciding whether an accused is entitled to relief and what type of relief may be given. We granted review to determine whether the military judge properly interpreted R.C.M. 703(f)(2) when he failed to abate the proceedings as to the wrongful use of cocaine charge.[1] We hold

---

[1] We granted review of the following issue:

> When the government destroys evidence essential to a fair trial, the Rules for Courts-Martial require the military judge to abate the proceedings. Here, the government negligently destroyed the sole piece of evidence that provided the basis for Appellant's conviction prior to both the referral of charges and the assignment of defense counsel. Should the military judge have abated the proceedings?

that the military judge abused his discretion in failing to abate the proceedings under R.C.M. 703(f)(2) as to the Article 112a charge and reverse the decision of the CCA.

## BACKGROUND

On March 7, 2011, Simmermacher provided a urine sample as part of a random drug test. On March 14, 2011, the Naval Drug Screening Laboratory (NDSL) notified Simmermacher's command that her urinalysis tested positive for cocaine. On March 21, 2011, Naval Criminal Investigative Service (NCIS) agents questioned Simmermacher about the test results, which showed a cocaine metabolite level of 151 nanograms/milliliter (ng/ml). The Department of Defense (DOD) cutoff for cocaine was 100 ng/ml. During the NCIS interview, Simmermacher denied using cocaine or any illegal narcotics, and expressed her willingness to take a polygraph test and provide another urine sample for testing purposes. When the random drug test was administered, Simmermacher was under investigation for allegations of child abuse, so the NCIS agents also questioned Simmermacher about injuries to her son.

United States v. Simmermacher, No. 14-0744, 2014 C.A.A.F. LEXIS 1065 (Nov. 5, 2014).

On April 11, 2011, NDSL sent the full urinalysis report to Simmermacher's command with a letter stating that the sample would be destroyed on March 16, 2012.[2]  As NDSL had not received a request from Simmermacher's command to retain the sample by that date, it was destroyed on March 16, 2012.

Twelve days later, Simmermacher was charged with wrongful use of cocaine, assault of a child, child endangerment, and making a false official statement.  The child assault and endangerment charges were later severed from the wrongful use of cocaine and false official statement charges.  Simmermacher was assigned counsel on April 6, 2012.  Defense counsel made a request to access the urine sample during discovery on April 17, 2012, and requested a retest of the sample on June 18, 2012. The government informed Simmermacher on July 10, 2012 that the sample had been destroyed.

Before trial, Simmermacher moved to suppress the urinalysis results, arguing that under R.C.M. 703(f)(2) the urine sample: (1) was relevant and necessary to the presentation of the defendant's case; (2) was of such central importance that it was essential to a fair trial; (3) there was no adequate substitute; (4) its destruction could not have been prevented by the

---

[2] Dep't of Defense, Instr. 1010.16, Technical Procedures for the Military Personnel Drug Abuse Testing Program (MPDATP) para. E1.9.2 (Dec. 9, 1994), provides: "Specimens confirmed as positive and not consumed in the testing process shall be properly secured in a frozen state for a minimum of 1 year from the date of the report."

defense; and (5) the defense had made a timely request to independently test the sample.  The defense also argued that preferral of charges against Simmermacher after the sample was destroyed violated Simmermacher's due process right to meaningfully examine the evidence against her.

The military judge denied the motion to suppress, holding that Simmermacher had failed to show that the urinalysis possessed an exculpatory value that was or should have been apparent to the government before it destroyed the sample, and also failed to show that she was unable to obtain comparable evidence by other reasonable means.  The military judge further found that Simmermacher was unable to prove the government had acted in bad faith in the urine sample's destruction.  However, the military judge did give the panel an adverse inference instruction regarding the government's destruction of the sample:  "Because the sample was destroyed after 1 year, you may infer that the missing evidence would have been adverse to the prosecution.  However, you are not required to draw this inference."

On appeal, the CCA held that the military judge correctly applied both the constitutional due process analysis and the R.C.M. 703(f)(2) analysis in his ruling, and did not abuse his discretion when he denied the motion to suppress. United States v. Simmermacher, No. NMCCA 201300129, 2014 CCA LEXIS 334, at *1-

United States v. Simmermacher, 14-0744/NA

*13, 2014 WL 2434199, at *1-*5 (N-M. Ct. Crim. App. May 29, 2014). The CCA specifically held that: (1) R.C.M. 703(f)(2) did not place any stricter requirements on the government to preserve evidence than are required under the constitutional standards, id. at *11-*12, 2014 WL 2434199, at *4 (citing United States v. Kern, 22 M.J. 49, 51 (C.M.A. 1986)); (2) Simmermacher was unable to prove that the destroyed sample was materially exculpatory, id. at *8, 2014 WL 2434199 at *3; (3) as Simmermacher had failed to show bad faith on the part of the government, the government's destruction of evidence was merely negligent, id. at *9, 2014 WL 2434199, at *3; and (4) the military judge fashioned an appropriate remedy by giving an adverse inference instruction, id. at *9-*10, 2014 WL 2434199, at *3.

DISCUSSION

Argument of the Parties

Before this court, Simmermacher argues that under R.C.M. 703(f)(2), the military judge was required to abate the proceedings. Simmermacher asserts she satisfied the three criteria of R.C.M. 703(f)(2): (1) the destroyed urine sample was essential to a fair trial because it was the only direct evidence of cocaine use; (2) no adequate substitute for the sample existed because the urinalysis report was conclusory and the defense was unable to challenge the foundation of that

6

report through a retest; and (3) the unavailability of the urine sample was not Simmermacher's fault nor could she have prevented its destruction as the government discarded the sample before Simmermacher was charged or assigned counsel.  Simmermacher also contends that because the granting of a continuance or other relief could not have produced the destroyed sample, abatement of the proceedings was the only available remedy.  Finally, Simmermacher argues that her case is controlled by United States v. Manuel, 43 M.J. 282, 288 (C.A.A.F. 1995), in which this Court found that R.C.M. 703(f)(2) contained a remedy beyond those provided under constitutional due process standards, and is "illustrative of the President's going even further than the Constitution and the Uniform Code in providing a safeguard for military personnel."  Accordingly, Simmermacher argues that under R.C.M. 703(f)(2), an accused is not required to prove bad faith by the government, which would be necessary under a constitutional due process analysis.

The government responds that Simmermacher failed to establish a violation of R.C.M. 703(f)(2), which it contends must be analyzed under constitutional due process standards. The government argues that Simmermacher has not demonstrated that it acted in bad faith, that the destroyed sample was exculpatory, or that she was unable to obtain comparable evidence.  As to the facial requirements of R.C.M. 703(f)(2),

United States v. Simmermacher, 14-0744/NA

the government argues that Simmermacher failed to show either that the urine sample was of such central importance to an issue that it was essential to a fair trial, or that the litigation packet and the defense's opportunity to question the NDSL government witness could not serve as an adequate substitute for the destroyed sample.  The government concludes by arguing that even if a 703(f)(2) violation did occur, the military judge had the discretion under Manuel to fashion an appropriate remedy, which he did by providing the members with an adverse inference instruction.

Standard of Review

A military judge's failure to abate proceedings is reviewed for an abuse of discretion.  United States v. Ivey, 55 M.J. 251, 256 (C.A.A.F. 2001).  An abuse of discretion occurs when a court's findings of fact are clearly erroneous or the decision is influenced by an erroneous view of the law.  United States v. Lubich, 72 M.J. 170, 173 (C.A.A.F. 2013).

Constitutional Due Process Standards

As the government asks this court to read constitutional due process standards into R.C.M. 703(f)(2), a brief overview of those standards is necessary.  California v. Trombetta, 467 U.S. 479, 489 (1984), found that a constitutional duty to preserve evidence exists if the following conditions are met:  the "evidence must both possess an exculpatory value that was

apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." In addition, Arizona v. Youngblood, 488 U.S. 51, 58 (1988), established that an appellant must prove bad faith by the government to establish a violation of the Due Process Clause when potentially useful evidence has not been preserved. While Simmermacher argued constitutional due process violations at both the court-martial and the CCA, she is relying only on R.C.M. 703(f)(2) before this court.

## Lost or Destroyed Evidence in Courts-Martial Prior to the Adoption of R.C.M. 703(f)(2)

The court addressed the issue of lost or destroyed evidence in Kern, 22 M.J. at 50, a case in which the accused was charged with possession of stolen property, but the government could not produce the property at trial. Kern argued that Article 46, UCMJ, 10 U.S.C. § 846, which provides a military defendant an equal opportunity to obtain evidence, required a more stringent rule governing preservation of evidence than that provided by constitutional due process standards. Id. The court in Kern, however, held that military law:

> does not place stricter requirements on the Government to preserve evidence which is not "apparently" exculpatory than is required of the states under the fourteenth amendment to the Constitution. The rule announced in Trombetta satisfies both constitutional and military standards of due process and should therefore be applicable to courts-martial.

Id.  While Kern did reference R.C.M. 703(f)(2) in its final footnote, the court did not analyze any rights or duties under the rule because Kern's court-martial occurred on April 30, 1984, and R.C.M. 703(f)(2) did not take effect until August 1, 1984.  Id. at 50, 52 n.4; Exec. Order No. 12473, 49 Fed. Reg. 17,152 (Apr. 13, 1984).[3]

This Court's R.C.M. 703(f)(2) Precedent

R.C.M. 703(f)(2) provides:

Notwithstanding subsection (f)(1) of this rule, a party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process.  However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

The court first addressed the substance of R.C.M. 703(f)(2) in Manuel, 43 M.J. at 284, which involved two defense requests for a retest of a positive urine sample, where the parties later discovered that the sample had been inadvertently destroyed.

---

[3] The court also referenced R.C.M. 703(f)(2) in United States v. Ellis, 57 M.J. 375, 380 (C.A.A.F. 2002), in which the appellant argued that the military judge should have given an adverse inference instruction where the government had discarded physical evidence.  While the court noted that an adverse inference instruction was an appropriate curative measure for improperly destroyed evidence, the court did not reach the R.C.M. 703(f)(2) issue, as it held any error was harmless in light of the appellant's confession.  57 M.J. at 382.

United States v. Simmermacher, 14-0744/NA

The court held that regulations requiring preservation of positive urine samples confer a substantial right on an accused to have his or her sample preserved, and it was not an abuse of discretion for the military judge to exclude the urinalysis results where the sample had been destroyed.  Id. at 287. Manuel clarified that constitutional due process was not the only right implicated when a military member's evidence was lost or destroyed, as the provisions of R.C.M. 703(f)(2) are also applicable.  Id. at 288.  Additionally, the court stated that R.C.M. 703(f)(2) is "illustrative of the President's going even further than the Constitution and the Uniform Code in providing a safeguard for military personnel."  Id.  Finally, the court held that R.C.M. 703(f)(2) "gives the court discretion to fashion an appropriate remedy if lost 'evidence is of such central importance to an issue that it is essential to a fair trial.'"  Id.

We last discussed R.C.M. 703(f)(2) in United States v. Madigan, 63 M.J. 118, 120-22 (C.A.A.F. 2006), where a positive blood sample was inadvertently destroyed seven months after the sample was taken, in violation of the military laboratory's policy of retaining samples for two years.  When Madigan filed a motion to dismiss the drug charge based on the destruction of the sample, the two-year retention period had already expired and she had failed to request access to or retention of the

11

sample during that period.  Id. at 119.  We held that "the

Government is not responsible for ensuring the availability of

the evidence after the authorized destruction date in the

absence of a timely request for access or retention."  Id. at

121.  However, the Court also noted that this decision rested

solely upon the facts and circumstances in that case.  Id. at

121-22.  We then set forth three scenarios in which the result

might differ, the third of which was where:

> a party demonstrates that, in a particular case, the
> period between notice to the party of the test result
> and destruction of the evidence did not provide the
> party with reasonable time within which to request
> access to the evidence.

Id.

In reviewing our precedent as to the lost or destroyed

evidence of military members, we note several inconsistencies.

There is nothing in the text or discussion of R.C.M. 703(f)(2)

which indicates that the President intended to incorporate

constitutional due process standards into that provision.[4]  We

---

[4] See United States v. Kearns, 73 M.J. 177, 181 (C.A.A.F. 2014)
(citations omitted):

> Where the language of the statute is clear and
> "Congress has directly spoken to the precise question
> at issue," we must "give effect to the unambiguously
> expressed intent of Congress."  As further stated by
> the Supreme Court, "It is well established that 'when
> the statute's language is plain, the sole function of
> the courts -- at least where the disposition required
> by the text is not absurd -- is to enforce it
> according to its terms."  There is no rule of

therefore agree with the holding in Manuel that constitutional due process standards are not a part of a R.C.M. 703(f)(2) analysis.  In addition, we find Kern's holding that military law does not contain stricter requirements than the constitutional due process standards to be inapplicable to a R.C.M. 703(f)(2) analysis, as the court-martial predated the adoption of R.C.M. 703 and the court did not analyze the rule.  While the due process standards created by Trombetta and Youngblood, and adopted in Kern, are still applicable to a constitutional due process inquiry for lost or destroyed evidence, R.C.M. 703(f)(2) is an additional protection the President granted to servicemembers whose lost or destroyed evidence fall within the rule's criteria.

We further note that Manuel and Madigan endorse, to different degrees, the concept that R.C.M. 703(f)(2) provides military judges with broad discretion to fashion an appropriate remedy when they have found a violation of that rule.  Manuel, 43 M.J. at 288; Madigan, 63 M.J. at 121.  We do not read the language of R.C.M. 703(f)(2) that broadly.  The "other relief" language in R.C.M. 703(f)(2) is clearly applicable only to the

statutory construction that allows for a court to append additional language as it sees fit.

"Ordinary rules of statutory construction apply in interpreting the R.C.M."  United States v. Hunter, 65 M.J. 399, 401 (C.A.A.F. 2008) (citing United States v. Clark, 62 M.J. 195, 198 (C.A.A.F. 2005)).

military judge's attempt to produce the missing evidence and does not grant the military judge broad discretion to fashion a remedy for violation of the rule.  If a continuance or other relief cannot produce the missing evidence, the remaining remedy for a violation of R.C.M. 703(f)(2) is abatement of the proceedings.[5]  We therefore overrule the language in Manuel and Madigan to the extent they are inconsistent with this holding.

Criteria under R.C.M. 703(f)(2)

1.  The lost or destroyed evidence was of such central
    importance that it was essential to a fair trial

In Manuel we held the destroyed urine sample was of such central importance to the defense that it was essential to a fair trial.  Manuel, 43 M.J. at 287, 288.  We see no meaningful distinction between the situation in Manuel and the situation presented in this case.  In both cases the government was negligent in destroying the samples prior to a timely request for a retest, the samples were the sole evidence of drug use, the accused denied using cocaine and had no explanation for the

_____

[5] We note that abatement of the proceedings is the remedy only if there has been a violation of R.C.M. 703(f)(2), which requires that all three criteria of the rule have been satisfied.  For instance, in this case, had the military judge suppressed the urinalysis report, the urine sample may no longer have been of central importance to the issue of Simmermacher's cocaine use.  Under that scenario, all three of the R.C.M. 703(f)(2) criteria would not have been met, and therefore a violation necessitating abatement of the proceedings would not have occurred.

positive results, and the nanogram levels were close to the DOD cutoff.[6]  Id. at 288-89.

2.  There was no adequate substitute for the lost or destroyed evidence

As in Manuel, there was no adequate substitute for Simmermacher's destroyed urine sample.  Through her retest request, Simmermacher was challenging whether the government's urinalysis test result was in fact correct and whether there had been any adulterations to or misidentifications of the sample. A laboratory report of the initial urinalysis process could therefore not serve as an adequate substitute for retesting the destroyed urine sample for such errors.  In addition, while Simmermacher's case-in-chief and cross-examination provided her the ability to present a defense and challenge the procedures of the initial testing process, it did not give her the ability to retest the sample.  This is particularly significant where the sample served as the sole evidence against her.

We note that in determining whether an adequate substitute for lost or destroyed evidence is available, a military judge has broad discretion.  It is when no adequate substitute is available, as in Simmermacher's case, that military judges do not have discretion to vary from the prescribed remedy.  Here, we do not believe that the military judge's permissive adverse

---

[6] In Manuel the nanogram level was 92 ng/ml above the then DOD cutoff, 43 M.J. at 284, and in this case the nanogram level was 51 ng/ml over the DOD cutoff level.

inference instruction constituted an adequate substitute. In providing the adverse inference instruction, the military judge presented the members with two contradictory propositions: the military judge initially instructed the members that they could infer that the laboratory procedures were proper, and that they also could infer from the positive drug test that Simmermacher knew she had used cocaine; however, the military judge then instructed the members that since the urine sample had been lost, they could infer that the missing evidence would have been adverse to the prosecution. The military judge made no attempt to clarify these inconsistent inferences.

3. The loss or destruction of the evidence was not the fault of nor could have it been prevented by the requesting party

As the sample was destroyed before Simmermacher was charged and before she was assigned counsel, there can be no reasonable expectation that she was in any manner responsible for the destruction of the sample. Nor could Simmermacher have prevented the destruction of the sample as she was not aware of NDSL's April 11, 2011, letter, which notified her command of the sample retention period.[7]

---

[7] This result is not inconsistent with Madigan, as it falls within the third Madigan scenario, i.e., where "a party demonstrates that, in a particular case, the period between notice to the party of the test result and destruction of the evidence did not provide the party with reasonable time within which to request access to the evidence." Madigan, 63 M.J. at 121-22.

Conclusion

As Simmermacher satisfied the three criteria set forth in R.C.M. 703(f)(2), and because a continuance or other relief could not have produced the destroyed urine sample, we hold that the military judge abused his discretion when he failed to abate the proceedings as to the charge of wrongful use of cocaine under Article 112a.

## DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to the charge of the wrongful use of cocaine under Article 112a, UCMJ, and as to the sentence. The decision is affirmed as to the charge of making a false official statement under Article 107, UCMJ.[8]  The charge of the wrongful use of cocaine is dismissed.  The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals for its determination to either reassess the sentence or to set aside the sentence and order a rehearing.

---

[8] Simmermacher was charged with an official false statement for informing NCIS agents that she had "never done any illegal substance, including cocaine."  Simmermacher did not challenge the false official statement conviction on appeal and two witnesses testified that they had observed her use drugs other than cocaine.