# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**Misc. Dkt. No. 2021-05**

_____

**UNITED STATES**
*Appellant*

**v.**

**Godric A. RAMIREZ**
Technical Sergeant (E-6), U.S. Air Force, *Appellee*

_____

Appeal by the United States Pursuant to Article 62, UCMJ

Decided 30 December 2021[1]

_____

*Military Judge:* Wesley A. Braun.

*GCM convened at:* Robins Air Force Base, Georgia.

*For Appellant:* Major Alex B. Coberly, USAF (argued); Colonel Naomi P. Dennis, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Mary Ellen Payne, Esquire.

*For Appellee:* Major Sara J. Hickmon, USAF (argued); Mark C. Bruegger, Esquire.

Before LEWIS, ANNEXSTAD and OWEN, *Appellate Military Judges.*

Judge OWEN delivered the opinion of the court, in which Senior Judge LEWIS and Judge ANNEXSTAD joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

[1] The court heard oral argument in this case on 21 October 2021.

OWEN, Judge:

This case arises out of an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862,[2] in a pending court-martial.

At trial, the military judge abated the proceedings against Appellee, pursuant to Rule for Courts-Martial (R.C.M.) 703(e)(2), citing as the basis for his ruling the Government's failure to preserve forensic extractions of the contents of electronic devices seized from Appellee by civilian law enforcement.

The Government now appeals the military judge's ruling on the grounds that he erred in finding the destroyed forensic extractions of Appellee's electronic devices were of central importance to a fair trial.[3] We agree.

## I. BACKGROUND

### A. Factual Background[4]

On 27 February 2019, local civilian law enforcement with the Houston County Sheriff's Office (HCSO), in Georgia, opened an investigation into the upload of possible child pornography on the social media site Tumblr. The investigation began after Tumblr reported the possible child pornography to the National Center for Missing and Exploited Children (NCMEC), which in turn forwarded the information via a cyber tip to Georgia law enforcement officials. The information forwarded from Tumblr included two GIFs[5] and one still JPEG image of suspected child pornography. Law enforcement used the Internet Protocol (IP) address associated with the account that made the Tumblr upload to identify Appellee's residence as the source of the upload.

On 30 April 2019, Sergeant BL and other members of HCSO executed a search warrant on the residence of Appellee and Appellee's roommate, Staff

---

[2] Unless otherwise specified, references to the UCMJ, the Military Rules of Evidence, and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] The Government also argues on appeal that the military judge erred in concluding the destruction of the forensic extractions of Appellee's electronic devices was not the fault of Appellee. We decline to address this argument.

[4] The facts in this section are drawn from the military judge's written findings of fact.

[5] A GIF is an image file that can be either still or animated. The record appears to indicate that a single GIF file was involved, but that it was "reblogged" on two separate occasions. Reblogging occurs when a Tumblr user finds a blog post located on another user's Tumblr blog and then chooses to share that other user's post as content on his or her own blog. This opinion will continue to use the phrase "the GIFs" to account for the reblogging.

Sergeant (SSgt) JW. Two agents with the Air Force Office of Special Investigations (AFOSI) were present during the execution of the search warrant. HCSO investigators spoke with Appellee and SSgt JW, who both voluntarily provided passwords and locations of electronic devices in the residence. HCSO seized the following devices: one MacBook, one Dell laptop, one red Western Digital drive, three iPads, one Seagate USB drive, one Canon camera, two Samsung cell phones, three iPhones, one iPod, two Windows tablets, eighteen CDs, one Trooper computer, three hard drives, and two HTC cell phones.

Sergeant BL reviewed the data on the devices. Sergeant BL's review took months to complete because the seized devices contained more than 10,000 pornographic images and videos; however, Sergeant BL ultimately did not locate the still JPEG image or the GIFs provided by Tumblr. Furthermore, Sergeant BL concluded the pornographic images and videos on the seized devices appeared to have been downloaded from commercial websites and did not include child pornography.

Sergeant BL subsequently met with Appellee and SSgt JW, and informed them that the investigation was being closed with no further action because no child pornography was discovered on their devices. Sergeant BL returned the electronic devices to Appellee and SSgt JW,[6] except for one laptop; this laptop was inadvertently retained by HCSO and eventually turned over to a paralegal in the Robins Air Force Base legal office. Sergeant BL also showed Appellee the alleged child pornography—two GIFs and a still JPEG image from the Tumblr cyber tip—that were the genesis of Sergeant BL's investigation into Appellee. Appellee and SSgt JW later reviewed the devices HCSO returned to them and Appellee found the still JPEG image in question on his cell phone. Appellee and SSgt JW then decided to destroy all of the devices they received back from HCSO.

After HCSO notified AFOSI that it was closing its investigation into Appellee, AFOSI continued its own investigation. On 27 November 2019, AFOSI Investigator (Inv) CL interviewed Appellee after the latter waived his rights under Article 31, UCMJ, 10 U.S.C. § 831. Appellee disclosed to Inv CL that after receiving his devices from HSCO, he found the still JPEG image of potential child pornography—the same one shown to him by HCSO—on his phone, and that he and SSgt JW subsequently destroyed their devices over concerns about the security of their home network. SSgt JW explained to investigators that

---

[6] Sergeant BL testified that the electronic devices were not all returned at once. Rather, Sergeant BL periodically returned devices back to Appellee and SSgt JW after Sergeant BL finished reviewing them. However, AFOSI—which had been monitoring the progress of Sergeant BL's investigation—was unaware until after the fact that Appellee's devices had been returned to him.

after he and Appellee found the image shown to them by Sergeant BL on Appellee's returned cell phone, they thought their devices "were hacked into" so they decided to destroy all of their devices and start over with new ones.

AFOSI also served a search warrant on Tumblr for Appellee's account, resulting in production of information related to the still JPEG image and the GIFs. In addition, Tumblr produced information on a video file of suspected child pornography that was not part of the original cyber tip. The information returned by Tumblr indicated that the still JPEG image included in the original cyber tip—the same image Appellee saw on his phone after Sergeant BL informed him HCSO was closing their investigation—was uploaded to Appellee's Tumblr account from Appellee's home IP address. However, the GIFs and video file associated with Appellee's Tumblr account were neither uploaded nor downloaded. Rather, they were "reblogged" using Appellee's account and his home IP address. The still JPEG image, the GIFs, and the video file provided by Tumblr form the basis of the charge and specification against Appellee.

## B. Procedural History

On 22 September 2020, a single charge and specification were preferred against Appellee, for wrongful possession of child pornography between on or about 16 February 2018 and on or about 13 August 2018, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C § 934, *Manual for Courts-Martial, United States* (2016 ed.). On 6 December 2020, following a preliminary hearing conducted pursuant to Article 32, UCMJ, 10 U.S.C. § 832, the Charge and its Specification were referred to trial by general court-martial. Appellee was arraigned on 21 January 2021. From 22 to 24 March 2021, the parties litigated pretrial motions.

On 22 March 2021, Appellee moved to dismiss the Charge and Specification, or in the alternative, abate the proceedings, due to the destruction of evidence in the case—namely, forensic extractions of the devices seized from Appellee that HCSO made during the course of its investigation. On 23 March 2021, the military judge conducted an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, in which the parties offered additional testimony and evidence relevant to the motion to dismiss the charge or abate proceedings.

## C. Appellee's Motion to Abate the Proceedings

During motion practice, Sergeant BL testified that as part of HCSO's investigation, forensic extractions were made of Appellee's devices. However, Sergeant BL further testified that when HCSO determined the devices did not contain any evidence of child pornography, and that no charges would result, it was standard practice to destroy the forensic extractions.

Trial defense counsel then called Mr. BJ as a defense expert in digital forensics. Mr. BJ testified that the still JPEG image uploaded to Tumblr was—

in accordance with Tumblr's protocols and consistent with practices on other social media sites—stripped of metadata. Thus, the still JPEG image uploaded to Tumblr would not show the image's source, whether or how often the user looked at it, the length of time on the device, or similar information.

Mr. BJ then testified extensively about what he might have been able to ascertain regarding Appellee's involvement with child pornography, if he had access to the destroyed forensic extractions of Appellee's devices. Mr. BJ told the court:

> [I]f we have the best forensic data available, you know you might be able to track directly from the website when it was down-loaded, what folder it was put into, [ ] whether it was moved from one folder to the next, and whether it was put onto a USB drive. Also whether -- how it got on the phone and then sent from there.

Mr. BJ confirmed to the military judge that the data from Tumblr indicated the GIFs and video file were neither uploaded to Tumblr from Appellee's devices nor were they downloaded to Appellee's devices from Tumblr. Instead, they were "reblogged" by Appellee's Tumblr account "from one area of the cloud to be linked to another area of the cloud."[7] Mr. BJ testified that he believed forensic extractions of Appellee's devices would let him confirm "whether or not the files were downloaded," whether "there was any interaction with the video file," whether there was other information on the devices related to the video, and whether a device's search history or the search terms used would tend to indicate an intent to seek out child pornography.

Mr. BJ further testified that with forensic extractions of Appellee's devices, he could "look across multiple devices in order to determine" Appellee's device usage during the time of the upload, including whether he was multitasking, e.g., watching a movie at the same time he was uploading a file to Tumblr. Mr. BJ also indicated he would have looked at the forensic extractions to see "if there were other messages" on Tumblr involving images of underage individuals and, if so, whether Appellee might have replied. He further noted that, "if [Appellee] used other social media there might [ ] also be other messages . . . talking about whether or not he was interested in young."[8]

Mr. BJ stated that some of the specific examples he proffered to the court regarding what the devices would show, as stated above, involved "conjecturing

---

[7] Mr. BJ explained the "cloud" was a reference to a backup stored on a "server some-where else" which was separate from a backup on a local device.

[8] Based on our review of the entire record, we interpret "whether or not he was inter-ested in young" as Mr. BJ's assessment of whether or not Appellee was interested in pornography depicting young males.

what [he] would find because [he did not] have the devices." For example, he indicated he could have determined the version and functionality of the Tumblr application that was on Appellee's device "assuming [Appellee used] one of his mobile devices" to reblog the GIFs. He also told the military judge that a review of the forensic extractions had the potential to produce inculpatory evidence, such as showing that Appellee "could have re-blogged [a file] and then downloaded it so he would keep it. And if we saw behavior like that then we would know that there was an intentionality to, to view it and keep it for later viewing as well." Mr. BJ stated that "the devices[9] would make it possible to assess either way."

**D. The Military Judge's Ruling to Abate the Proceedings**

On 24 March 2021, the military judge issued a written ruling denying the motion to dismiss but granting the motion to abate proceedings. On 26 March 2021, the Government filed a motion requesting the military judge reconsider his ruling. On 31 March 2021, Appellee filed his opposition to the Government's motion. On 10 May 2021, the court held an Article 39(a), UCMJ, session to hear argument on the reconsideration motion. On 18 June 2021, the military judge issued a ruling denying the Government's motion for reconsideration.[10]

In his ruling, the military judge found that the Government had not acted in bad faith with respect to the destroyed forensic extractions, and thus found that dismissal with prejudice was not warranted. However, he agreed with Appellee's assertion that "the forensic extractions of [Appellee's] electronic devices would be critical to the Defense's ability to present a defense in this case." He expanded on this conclusion by noting a "forensic extraction of the evidence, particularly, the phone which contained the [still JPEG] image at issue in this court-martial would be incredibly relevant to the Defense." The metadata from that still JPEG image, for example, "would show the time the file was downloaded, how often the file was viewed, and whether the file was edited."

The military judge made specific findings about what the forensic extraction of Appellee's devices would have shown:

> As it relates to the files[11] uploaded to Tumblr, a forensic extrac-
> tion would have assisted the [D]efense in identifying the source

---

[9] Before us, the parties agree that the destroyed evidence is the forensic extractions of the devices.

[10] In his ruling on reconsideration, the military judge made minor corrections to the law he cited in his original ruling.

[11] The evidence in the record indicates only a single still JPEG image was uploaded to Tumblr.

of the files uploaded. It would have also shown the extent of any interaction [Appellee] had with the GIF and video which he re-blogged. Finally, it would have assisted the [D]efense in determining whether the image downloaded and then posted to Tumblr was intentionally downloaded by [Appellee] onto his personal device and possessed by [Appellee] as alleged by the Government.

Quoting from the Military Judge's Benchbook instructions on wrongful possession of child pornography, the military judge noted that matters such as "the name of a computer file or folder, the name of the host website from which a visual depiction was viewed or received, search terms used, and the number of images possessed" would typically be considered when determining whether the Government proved the alleged offense. *See Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9, ¶ 3-68B-1 (10 Sep. 2014). As part of the military judge's conclusion that the forensic extractions were of central importance to a fair trial, he noted that Appellee could no longer challenge these issues due to the destruction of the forensic extractions.

The military judge found there was no adequate substitute for the destroyed forensic extractions, noting in particular that "[a] forensic extraction is the preferred standard in criminal investigations involving digital evidence." The military judge also found that Appellee was not at fault for the destruction of the evidence. He noted that Sergeant BL "made the sole decision to destroy this evidence and made that determination after consulting with Inv [CL] and a local judge advocate."

## II. DISCUSSION

**A. Law**

### 1. Jurisdiction and Standard of Review

This court has jurisdiction to hear this appeal under Article 62(a)(1)(A), UCMJ, 10 U.S.C. § 862(a)(1)(A), which authorizes the Government to appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification."

When the Government appeals a ruling under Article 62, UCMJ, this court reviews the military judge's decision "directly and reviews the evidence in the light most favorable to the party which prevailed at trial." *United States v. Lewis*, 78 M.J. 447, 453 (C.A.A.F. 2019) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)). Because this issue is before us pursuant to a government appeal, we "may act only with respect to matters of law." Article 62(b), UCMJ, 10 U.S.C. § 862(b). We are limited to determining whether the military judge's factual findings are clearly erroneous or unsupported by the record. *United*

*States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). "A reviewing court may not 'find its own facts or substitute its own interpretation of the facts.'" *United States v. Becker*, ___ M.J. ___, No. 21-0236, 2021 CAAF LEXIS 844, at *16 (C.A.A.F. 14 Sep. 2021) (quoting *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007)).

We review a military judge's ruling on whether to abate proceedings under R.C.M. 703(e)(2)[12] for an abuse of discretion. *United States v. Simmermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015); *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001); *United States v. Wright*, 75 M.J. 501, 509 (A.F. Ct. Crim. App. 2015).

> A military judge abuses his discretion when: (1) he predicates his ruling on findings of fact that are not supported by the evidence of record; (2) he uses incorrect legal principles; (3) he applies correct legal principles to the facts in a way that is clearly unreasonable[;] or (4) he fails to consider important facts.

*United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (citations omitted). Put another way: "[a]n abuse of discretion occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *Becker*, 2021 CAAF LEXIS 844, at *13 (quoting *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003)). This standard applies to Article 62, UCMJ, appeals. *Id.* (citing *United States v. Mitchell*, 76 M.J. 413, 417 (C.A.A.F. 2017)); *see also United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) ("A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable.").

"A finding of fact is clearly erroneous when there is no evidence to support the finding, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (internal quotation marks and citations omitted).

### 2. Lost or Destroyed Evidence

In cases where evidence is lost or destroyed but where there is no constitutional duty or Due Process Clause[13] violation, R.C.M. 703(e) provides the following:

---

[12] Formerly R.C.M. 703(f)(2), *Manual for Courts-Martial, United States* (2016 ed.).

[13] U.S. CONST. amend. V.

(1) *In general.* Each party is entitled to the production of evidence which is relevant and necessary.

(2) *Unavailable evidence.* Notwithstanding paragraph (e)(1), a party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

To be entitled to relief under R.C.M. 703(e)(2), the moving party must establish: (1) the lost or destroyed evidence is of central importance to a fair trial, (2) there is no adequate substitute for the lost or destroyed evidence, and (3) the moving party is not at fault for the destroyed or lost evidence. *Simmermacher*, 74 M.J. at 201. "If a continuance or other relief cannot produce the missing evidence, the remaining remedy for a violation of R.C.M. [703(e)(2)] is abatement of the proceedings." *Id.*

## B. Analysis

As an initial matter, we find the military judge's findings of fact were clearly erroneous in that the evidentiary value he placed on the destroyed forensic extractions of Appellee's devices is unsupported by the evidence of record.

### 1. The Evidence of Record

The military judge relied heavily, if not exclusively, on the testimony provided by Mr. BJ to reach his findings of fact regarding the evidentiary value of the forensic extractions. With regard to the still JPEG image uploaded to Tumblr, the military judge found that a forensic extraction *would have* assisted the Defense in identifying the source of the file uploaded and *would have* assisted the Defense in determining whether it was intentionally downloaded by Appellee onto his personal device. The military judge also found that a forensic extraction *would have* shown the extent of any interaction Appellee had with the GIFs and video which he reblogged. In arriving at his findings of fact, the military judge ignored the qualified nature of Mr. BJ's testimony with regard to speculation about what, if anything, the destroyed forensic extractions would have shown. Since Mr. BJ never saw the forensic extractions, his testimony was not tailored to the case at hand, but instead he testified in generic terms about what information a forensic extraction can provide and even prefaced his testimony at one point on the condition of "hav[ing] the best forensic

data available." As a result, the military judge's findings of fact are not supported by the evidence and are clearly erroneous.

The evidence of record establishes that, had the "best" forensic extractions of Appellee's devices been available, the defense expert, Mr. BJ, would have examined them in an effort to confirm "whether or not the files were downloaded," whether "there was any interaction with the video file" by Appellee, whether there was other information on the devices related to the video, and whether a device's search history or the search terms used would tend to indicate an intent by Appellee to seek out child pornography. Mr. BJ also testified that, "if [Appellee] used other social media there might [ ] also be other messages . . . talking about whether or not he was interested in young."

Significantly, Mr. BJ also testified that a review of the forensic extractions had the potential to produce inculpatory as well as exculpatory evidence—such as showing that Appellee "could have re-blogged [the GIF] and then downloaded it so he would keep it." He also acknowledged that some of the specific examples he provided—regarding what a forensic extraction of the devices would show—involved "conjecturing what [he] would find."

We acknowledge there was evidence presented that Appellee accessed the still JPEG image using one of the phones seized by HCSO after it was returned to him. SSgt JW testified he saw the still JPEG image on a phone after Appellee accessed it; however, SSgt JW did not describe the process used by Appellee to access it. Moreover, as Appellee did not testify on the motion, the record also does not demonstrate which seized devices, if any, Appellee used to access Tumblr during the charged timeframe or what settings those devices utilized regarding Tumblr content. Furthermore, it is unclear from the record exactly what type of forensic extractions were originally created by HCSO or what data was actually captured.

Such details, if presented as evidence during the motion, may have permitted the military judge to find by a preponderance of the evidence that HCSO's forensic extraction of one of Appellee's phones would have captured some of the information the Defense sought for the still JPEG image. Ultimately, although Mr. BJ could definitively testify as to what analysis he would have performed with the forensic extractions if he had access to them, he is only able to speculate as to what such an analysis might discover. As a result, without additional evidence, the military judge's findings regarding the still JPEG image are unsupported by the record and clearly erroneous.

**2. Central Importance to a Fair Trial**

Based on these findings, the military judge concluded that the destroyed evidence was of central importance to a fair trial due to the fact it "would be incredibly relevant to the Defense." The military judge believed the metadata

from the forensic extraction of the cell phone containing the still JPEG image would "likely provide other information [which] would assist the [D]efense in determining the source of the image," and in gaining additional information about how Appellee interacted with the image that was uploaded to Tumblr. The Government argues that Mr. BJ's testimony regarding what a forensic extraction, using the best forensic data available, might have been able to show was too speculative in nature to support the military judge's conclusion that the destroyed forensic extractions were of central importance to an issue essential to a fair trial. We agree with the Government.

### 3. Speculative Evidentiary Value

This court previously opined on the relative importance of evidence of speculative exculpatory value in *United States v. Terry*, 66 M.J. 514, 518 (A.F. Ct. Crim. App. 2008). In *Terry*, a law enforcement agent investigating a sexual assault alleged to have occurred inside a hospital viewed several hours of hallway surveillance photos and ultimately determined the photos were of no evidentiary value. *Id.* at 516. The photos were later lost. *Id.* The defense argued that the photos might have captured images of the victim or the accused that could have been helpful at trial; however, the court noted it was just as likely the images could have been inculpatory, neither inculpatory nor exculpatory, or of no evidentiary value at all. *Id.* at 518. The court concluded that "[t]he possibility that potentially exculpatory images could have been found on the surveillance photos is simply too speculative to conclude that the missing photos were 'of central importance to an issue that is essential to a fair trial.'" *Id.*

Appellee claims in his brief that the destroyed forensic extractions "contained the sole evidence" of the charged offense in the case against Appellee. He thus analogizes his case to that of *Simmermacher*, 74 M.J. 196, and claims that the destruction of the "sole evidence" in the case should weigh in favor of the lost evidence being considered of central importance to an issue that is essential to a fair trial. In *Simmermacher*, the Government brought a charge of wrongful use of cocaine against the appellant based solely on the result of a positive urinalysis test. *Id.* at 198. After referral of the charge but before the defense could request a retest of the urine specimen, the Government notified trial defense counsel that the remainder of the specimen had been destroyed. *Id.* Trial defense counsel subsequently motioned the court to suppress the urinalysis test results under R.C.M. 703, but the military judge denied the motion in part because the appellant failed to show that the urine specimen possessed an exculpatory value that should have been apparent to the Government before it was destroyed. *Id.* Our court concurred. *Id.* However, the United States Court of Appeals for the Armed Forces reversed, following its earlier precedent in holding the urine specimen was of such central importance that it was essential to a fair trial, with emphasis on the fact the destroyed urine specimen

was the sole evidence of drug use. *Id.* at 201 (citing *United States v. Manuel*, 43 M.J. 282, 287–88 (C.A.A.F. 1995)).

The facts of this case are distinguishable from *Simmermacher*. Unlike in *Simmermacher*, where the destroyed urine specimen constituted the totality of the Government's evidence in the case, in the present case, the Government's evidence against Appellee consists of a still JPEG image, the GIFs, and a video file from the Tumblr social media site. An analysis of Appellee's devices by Sergeant BL failed to discover any evidence of child pornography on those devices. As a result, the destroyed forensic extractions are not the *sole* evidence in the case and the facts in Appellee's case are more akin to the photos in *Terry* than to the urine specimen in *Simmermacher*. Similarly, other cases cited favorably by Appellee involved fact patterns in which the court was aware of the exact contents of the lost or destroyed evidence and, based on that knowledge, was able to determine whether the lost or destroyed evidence was of such central importance to an issue that it was essential to a fair trial. *See United States v. Rothe*, No. ACM 39817, 2021 CCA LEXIS 117 (A.F. Ct. Crim. App. 24 Mar. 2021) (unpub. op.); *United States v. Seton*, Misc. Dkt. No. 2013-27, 2014 CCA LEXIS 103 (A.F. Ct. Crim. App. 24 Feb. 2014) (unpub. op.). In the present case, the speculative nature of what information may or may not have been contained in the destroyed forensic extractions, especially with regard to the GIFs and video file which were never uploaded to Tumblr by Appellee, makes such a determination near-impossible.[14] As a result, we conclude the military judge predicated his ruling to abate proceedings on findings of fact that are not supported by the evidence of record and therefore abused his discretion.

### III. CONCLUSION

The appeal of the United States under Article 62, UCMJ, 10 U.S.C. § 862, is **GRANTED**. The military judge's ruling to abate the trial proceedings is **REVERSED**.

The record is returned to The Judge Advocate General for remand to the

---

[14] We note that even if Appellee had access to the destroyed forensic extractions, the most helpful expert conclusion for Appellee would have been that there is no evidence he ever had actual possession of the contraband in question—the exact testimony provided by Sergeant BL regarding the search of Appellee's devices, which produced no evidence of child pornography and located none of the Tumblr files that initiated the cyber tip.

Chief Trial Judge, Air Force Trial Judiciary, for action consistent with this opinion.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court