*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, HARRELL, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Brian J. SUMPTER**
Aviation Structural Mechanic First Class (E-6), U.S. Navy
*Appellant*

**No. 202400329**

_____

Decided: 6 February 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Derek D. Butler (arraignment)
Derek A. Poteet (motions)
Mishonda M. Mosley (trial)

Sentence adjudged 10 May 2024 by a general court-martial tried at Washington Navy Yard, District of Columbia. Sentence in the Entry of Judgment: reduction to E-1, confinement for seven years, and a dishonorable discharge.

For Appellant:
*Mr. Frank J. Spinner*
*LT Meggie C. Kane-Cruz, JAGC, USN*

For Appellee:
*LT Stephanie N. Fisher, JAGC, USN*
*LT K. Matthew Parker, JAGC, USN*

Judge KORN delivered the opinion of the Court, in which Chief Judge DALY and Senior Judge HARRELL joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

KORN, Judge:

A general court-martial composed of members with enlisted representation convicted Appellant of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ).[1] The military judge sentenced Appellant to confinement for seven years, reduction to paygrade E-1, and a dishonorable discharge.

Appellant raises two assignments of error (AOE):

> **I. Did the motions judge abuse his discretion when he admitted alleged victim testimony about uncharged sexual offenses over Defense objections made under M.R.E. 403, 413, and R.C.M. 914 and 703(e)(2)?**

> **II. Is the evidence legally and factually sufficient when the Government did not prove "without consent" beyond a reasonable doubt?**

We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was convicted of sexually assaulting his 18-year-old stepdaughter, Ms. November.[2] Years prior, both Ms. November and Appellant's other stepdaughter, Ms. Golf, alleged that Appellant sexually abused them while they were 14 and 11 years old, respectively. Following these allegations, both

---

[1] 10 U.S.C. § 920.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

girls went to live with their grandmother and ultimately recanted the allegations against Appellant. Ms. November returned to live with Appellant and her mother, Ms. Sierra, shortly after turning 18.

Approximately 10 months after returning to Appellant's house, Ms. November was alone in the living room with Appellant after Ms. Sierra and Appellant's three biological children had gone to bed. Appellant and Ms. November testified to similar versions of what occurred next, aside from the critical issue of whether Ms. November consented to Appellant's actions. Ms. November testified that Appellant offered her a massage, which she declined. Appellant proceeded to give her a massage anyway, and then touched her breast. Appellant then pulled Ms. November's pants down and had sex with her against her will. Appellant testified that Ms. November accepted his offer of a massage. While he was massaging her, he touched her breast, asked her if it was all right, and she said yes. They then kissed, she grabbed his crotch, and they proceeded to have sex after he confirmed she was consenting.

A few minutes later, Ms. November called her grandmother and told her and Ms. Golf, who was still living with their grandmother, what had happened. Ms. November then woke up Ms. Sierra and told her what had happened.

The Government initially charged Appellant with both sexually assaulting Ms. November when she was 18 and sexually abusing both of his stepdaughters when they were children. The military judge later granted a Defense motion to sever the sexual assault charge from the child sexual abuse charges. The Government then notified Appellant of its intention to offer evidence of Appellant's prior sexual abuse of Ms. November and Ms. Golf as evidence of similar crimes in sexual offense cases under Military Rule of Evidence (Mil. R. Evid.) 413. Appellant sought evidence from the Norfolk, Virginia Child Protective Services (CPS) relating to Ms. November's and Ms. Golf's recantations of the prior allegations of sexual abuse. However, based on state law, the records pertaining to those allegations and the subsequent recantations had been destroyed.

Appellant moved to prevent the Government from offering evidence that Appellant had sexually abused Ms. November and Ms. Golf when they were children, arguing the evidence failed to meet the tests for admissibility under Mil. R. Evid. 413 and 403. Appellant further argued that Ms. November's and Ms. Golf's testimony was precluded by Rule for Courts-Martial (R.C.M.) 914 because records of their recantations had been destroyed, despite acknowledging that "it is unknown whether the recantation statements were ever formally

documented or retained . . . ."[3] Finally, Appellant argued that this testimony was also precluded by Mil. R. Evid. 703(e)(2), as the unavailable CPS records contained evidence that was essential to a fair trial. Appellant alternatively asked the military judge to abate the proceedings due to the unavailable CPS records.

The military judge found that the testimony about Appellant sexually abusing his stepdaughters was admissible under both Mil. R. Evid. 413 and 403.[4] He further ruled that the CPS records were not statements as defined by R.C.M. 914, and even if they were, they were never in the possession of the United States.[5] The military judge determined that abatement was not warranted under Mil. R. Evid. 703 because the CPS records were not of such central importance that they were essential to a fair trial, since other evidence existed to allow Appellant to impeach Ms. November's and Ms. Golf's credibility by showing they had recanted their allegations.[6] That alternative evidence included the testimony of an Assistant Commonwealth's Attorney, who interviewed Ms. November and Ms. Golf, and to whom they both admitted to recanting the allegations of sexual abuse to CPS due to concerns that their allegations would cause their mother to get in trouble with CPS. Additionally, the military judge required the Government to stipulate to the basic facts pertaining to Ms. November's and Ms. Golf's recantations to CPS, and barred the Government from introducing recordings of their child forensic interviews for any reason, to include as prior consistent statements.[7] Ms. November and Ms. Golf ultimately testified about the prior sexual abuse.

---

[3] App. Ex. III at 4.

[4] App. Ex. LXXVIII at 15.

[5] App. Ex. LXXVIII at 7–8.

[6] The military judge concluded that even if the CPS files were of such central importance that they were essential to a fair trial, adequate substitutes existed for the missing evidence. App. Ex. LXXVIII at 8.

[7] App. Ex. LXXVIII at 14.

## II. DISCUSSION

**A. The military judge did not abuse his discretion when he admitted testimony from Ms. November and Ms. Golf about Appellant sexually abusing them as children.**

We review a military judge's decision to admit evidence for an abuse of discretion.[8]

> "The abuse of discretion standard calls for more than a mere difference of opinion," but instead occurs when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law."[9]

*1. The evidence was admissible under Mil. R. Evid. 413(a).*

Military Rule of Evidence 413(a) states, "In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant."

The three threshold requirements for admitting such evidence are: "(1) the accused must be charged with an offense of sexual assault; (2) the proffered evidence must be evidence of the accused's commission of another offense of sexual assault; and (3) the evidence must be relevant under [Mil. R. Evid.] 401 and [Mil. R. Evid.] 402."[10] To meet the second requirement, the military judge "must conclude that the members could find by preponderance of the evidence that the offenses occurred."[11]

Appellant was charged with sexual assault under Article 120. The testimony at issue described evidence of Appellant's commission of multiple prior

---

[8] *United States v. Solomon,* 72 M.J. 176, 179 (C.A.A.F. 2013) (citing *United States v. Ediger,* 68 M.J. 243, 248 (C.A.A.F. 2010)).

[9] *United States v. Warda,* 84 M.J. 83, 90 (C.A.A.F. 2022) (quoting *United States v. Stellato,* 74 M.J. 473, 480 (C.A.A.F. 2015)).

[10] *Solomon,* 72 M.J. at 179 (citing *United States v. Berry,* 61. M.J. 91, 95 (C.A.A.F. 2005); *United States v. Wright,* 53 M.J. 476, 483 (C.A.A.F. 2000)).

[11] *Wright,* 53 M.J. at 483 (citing *Huddleston v. United States,* 485 U.S. 681, 689-90, (1988)).

sexual offenses. The military judge properly found that the members could conclude by a preponderance of the evidence that Appellant sexually abused his stepdaughters when they were children. He further properly found that the evidence was relevant under Mil. R. Evid. 401 and 402, as "[t]he prolonged and escalating nature of the earlier allegations is relevant to propensity."[12]

After making the three threshold findings under Mil. R. Evid. 413, the military judge must then apply a balancing test under Mil. R. Evid. 403.[13] That rule provides that "[t]he military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting of time, or needlessly presenting cumulative evidence." In the Mil. R. Evid. 413 context, "[t]he Rule 403 balancing test should be applied in light of the strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible[.]"[14] When a military judge articulates a properly conducted Mil. R. Evid. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion.[15]

Prior to allowing the Government to present Ms. November's and Ms. Golf's testimony about Appellant's previous sexual abuse, the military judge properly conducted a Mil. R. Evid. 403 balancing test and explained his analysis of the relevant factors in a written ruling.[16] We conclude that the military judge did not abuse his discretion in conducting an Mil. R. Evid. 403 balancing test or in admitting the evidence under Mil. R. Evid. 413.

*2. The evidence was not subject to R.C.M. 914.*

Rule for Courts-Martial 914(a) states:

> After a witness other than the accused has testified on direct examination, the military judge, on motion of a party who did not call the witness, shall order the party who called the witness to produce, for examination and use by the moving party, any statement of the witness that relates to the subject matter concerning which the witness has testified, and that is . . . in the possession of the United States . . . .

---

[12] App. Ex. LXXVIII at 11.

[13] *Berry*, 61 M.J. at 95.

[14] *Wright*, 53 M.J. at 482 (citation modified).

[15] *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

[16] App. Ex. LXXVIII at 12–14.

A "statement" is defined, in part, as "[a] substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in a recording or a transcription thereof."[17]

The military judge found that the missing CPS records did not contain "statements" of the witnesses for purposes of R.C.M. 914, and even if they did, they were never in the possession of the United States.[18] We agree with the military judge on both counts. There was no evidence to indicate the CPS records included "substantially verbatim recital[s] of [ ] oral statement[s] . . . contained in a recording or a transcription thereof,"[19] and the CPS records were never in the possession of the United States. The military judge therefore did not abuse his discretion in denying Appellant's motion under R.C.M. 914.

*3. The evidence was not precluded by R.C.M. 703.*

When evidence is lost or destroyed, R.C.M. 703(e)(2) sets forth the criteria and process a military judge must follow in deciding whether an accused is entitled to relief and what type of relief may be given. To be entitled to relief at trial under R.C.M. 703(e)(2), an accused must show: (1) the destroyed evidence is essential to a fair trial; (2) there is no adequate substitute for the evidence; and (3) the accused is not at fault or could not have prevented the unavailability of the evidence.[20]

If relevant and necessary "evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings . . . ."[21] Determining whether there is an adequate substitute for unavailable evidence depends upon the purpose of the evidence.[22] A military judge has broad discretion in determining whether an adequate substitute exists.[23]

---

[17] R.C.M. 914(f)(2).

[18] App. Ex. LXVIII at 7–8.

[19] R.C.M. 914(f)(2).

[20] *See United States v. Simmermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015).

[21] R.C.M. 703(e)(2).

[22] *Warda*, 84 M.J. at 94 (citing *United States v. Rothe*, No. ACM 39817, 2021 CCA LEXIS 117, at *17 (A.F. Ct. Crim. App. Mar. 24, 2021) (unpublished)).

[23] *Simmermacher*, 74 M.J. at 202.

The military judge determined that the documentation of Ms. November's and Ms. Golf's recantations was relevant and necessary evidence, as recantations can be used to attack a witness's credibility. The military judge further determined that the evidence had been destroyed, lost, or otherwise was not subject to compulsory process. However, the military judge determined that the missing evidence was not of central importance because other evidence existed to show that Ms. November and Ms. Golf recanted their allegations of child sexual abuse, and Appellant could use that evidence to attack their credibility. Additionally, the military judge determined that even if the missing CPS records were of such central importance to an issue that they were essential to a fair trial, "there are ample substitutes for the destroyed evidence which are fully adequate,"[24] to include the testimony of the Assistant Commonwealth's Attorney to whom both Ms. November and Ms. Golf admitted to recanting their allegations to CPS. The military judge then required the Government to stipulate to the basic facts pertaining to the recantations by Ms. November and Ms. Golf to CPS, and barred the Government from introducing the prior child forensic interviews.

Appellant's primary complaint is that, in testifying about Appellant's uncharged sexual abuse, Ms. Golf's testimony was "very graphic, prejudicial and inflammatory" and "went far beyond the stipulation's use of the phrase 'sexually inappropriate manner,'" thereby precluding Appellant from any "realistic or effective way to counter her testimony with the information that could have been found in the destroyed files."[25] However, while Appellant understandably struggled to effectively counter his stepdaughter's testimony that he had repeatedly sexually abused her during her childhood, those struggles were not the result of Appellant lacking access to the CPS files documenting the recantation. Appellant had adequate evidence available to prove that recantation, to include both the stipulation of fact and the testimony of the Assistant Commonwealth's Attorney. Appellant's difficulty at trial in using the evidence of Ms. Golf's recantation to impeach her credibility was due not to the source of that evidence, but instead was due to the fact that he was unable to demonstrate that Ms. Golf recanted her prior allegations because they were false.

Appellant misconstrues evidence showing that Ms. November and Ms. Golf recanted their prior allegations as evidence showing that they lied when they made the prior allegations. The missing CPS records would have shown the recantations, but Appellant had multiple other sources available to provide the same evidence. There is no reason to believe that the missing CPS records

---

[24] App. Ex. LXVIII at 9.

[25] Appellant's Brief at 13-14.

would have shown that the initial allegations were false. When seeking relief because evidence was destroyed, the burden is on the defense to show that the evidence is of such central importance to an issue that it is essential to a fair trial.[26] Here, Appellant cannot demonstrate that the missing CPS records contained evidence that Ms. November or Ms. Golf recanted the allegations of child sexual abuse because they were false. Therefore, because Appellant was able to present the members with equivalent evidence to that which existed in the unavailable CPS records, the military judge did not abuse his discretion when he declined to abate the proceedings and determined that an adequate substitute existed for the missing evidence.

We conclude that the military judge properly analyzed the evidence in question under Mil. R. Evid. 413 and 403 and R.C.M. 904 and 703(e)(2), and did not abuse his discretion in allowing Ms. November and Ms. Golf to testify about Appellant's uncharged sexual abuse.

### B. The evidence was legally sufficient.

To determine legal sufficiency, we ask "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."[27] The standard for legal sufficiency therefore "involves a very low threshold to sustain a conviction."[28]

In order to prove Appellant guilty of the sole specification under Charge I, the Government had to prove beyond a reasonable doubt that on or about 12 July 2021: (1) Appellant committed a sexual act upon Ms. November by penetrating her vulva with his penis; and (2) he committed the sexual act without her consent.[29] At trial, the Government presented Ms. November's testimony that Appellant had sex with her without her consent. Considering the evidence presented at trial in the light most favorable to the prosecution, a reasonable factfinder could have found both elements beyond a reasonable doubt. The evidence is therefore legally sufficient.

---

[26] *Warda*, 84 M.J. at 92 (citing *Simmermacher*, 74 M.J. at 199).

[27] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

[28] *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

[29] *Manual for Courts-Martial (MCM), United States*, pt. IV, para. 60.a.(b)(2)(A).

**C. The evidence was factually sufficient.**

This "Court may consider whether a finding of guilty is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof."[30] If an appellant makes such a showing, this "Court may weigh the evidence and determine controverted questions of fact," providing "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence."[31] If this Court is "clearly convinced that the finding of guilty was against the weight of the evidence," we "may dismiss, set aside, or modify the finding, or affirm a lesser finding."[32]

The specification alleged that Appellant did "commit a sexual act upon [Ms. November], by penetrating [Ms. November's] vulva with [Appellant's] penis, without the consent of [Ms. November]."[33] We must first consider whether Appellant has made a specific showing of a deficiency in proof.[34] Here, we will assume without deciding that Appellant's testimony that Ms. November consented to the sexual activity, coupled with evidence impeaching her credibility, amounts to a sufficient weakness in the evidence to initiate our factual sufficiency review.

We are, however, unmoved by Appellant's arguments that the guilty finding was against the weight of the evidence. Instead, we find the evidence overwhelmingly demonstrated that Ms. November did not consent to the sexual activity with Appellant. At the time of the events in question, Ms. November was 18 years old, and Appellant was her stepfather whom she had previously alleged sexually abused her while she was a child. Immediately after the events in question, Ms. November reported that Appellant had sexually assaulted her to both her grandmother and her mother. She then reported the crime to the police, and underwent a sexual assault forensic examination, which conclusively demonstrated that the sexual activity with Appellant had occurred.[35]

---

[30] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[31] *Id.*

[32] *Id.*

[33] Charge sheet.

[34] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[35] The Government's expert from the United States Army Criminal Laboratory testified that it was "at least 1.0 quintillion times more likely that [the seminal DNA found on Ms. November's vaginal swab] originated from [Appellant] than if it originated from an unknown individual." R. at 968.

Appellant argues that Ms. November "purposely consented to sex in order to make the allegation" against Appellant.[36] We find this argument flies in the face of the overwhelming evidence conclusively demonstrating that Appellant sexually assaulted his stepdaughter. We are therefore not clearly convinced that the finding of guilty was against the weight of the evidence.

## III. Conclusion

After careful consideration of the record and the briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[37]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[36] Appellant's Brief at 19.

[37] Articles 59 & 66, UCMJ.