*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

## UNITED STATES
Appellee

**v.**

## Ashraf S. WARDA, Sergeant
United States Army, Appellant

**No. 22-0282**
Crim. App. No. 20200644

Argued February 21, 2023—Decided September 29, 2023

Military Judges: Teresa L. Raymond and Troy A. Smith

For Appellant: *Mr. William E. Cassara,* Esq. (argued); *Captain Tumentugs D. Armstrong* (on brief).

For Appellee: *Captain Andrew M. Hopkins* (argued); *Colonel Christopher B. Burgess, Lieutenant Colonel Jaqueline J. DeGaine, and Major Pamela L. Jones* (on brief).

Amicus Curiae for Appellant: *Donald G. Rehkopf Jr.*, Esq., and *Barbara E. Bergman*, Esq. (on behalf of the National Association of Criminal Defense Lawyers) (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge HARDY joined. Chief Judge OHLSON filed a separate concurring opinion, in which Judge HARDY joined. Judge MAGGS filed a separate dissenting opinion.

───────────────

Judge JOHNSON delivered the opinion of the Court.

This case involves Appellant's multiple requests for discovery and production of records which went awry primarily because of the subject matter of the records. Appellant was requesting the immigration records of the sole complaining witness.

At the outset, we note that early in the case, the military judge denied defense counsel's request for an immigration law expert.[1] This case illustrates the importance of heeding the cautionary words of the United States Court of Appeals for the Ninth Circuit: "With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' A lawyer is often the only person who could thread the labyrinth." *Castro-O'Ryan v. U.S. Dep't of Immigr. and Naturalization*, 847 F.2d 1307, 1312 (9th Cir. 1987) (quoting E. Hull, *Without Justice For All*, 107 (1985)); *see also Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) ("Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it."). All parties, including the military judge, would have benefitted from said expert. The denial set off a series of events culminating in the findings and rulings at issue on this appeal.

A panel with enlisted representation sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of rape in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012).[2] The panel sentenced Appellant to a dishonorable

---

[1] The defense moved to compel production of an immigration law attorney as an expert consultant and potential expert witness on immigration law and policy. The military judge denied the motion, finding it "highly irregular" to request an attorney as an expert and unclear why trial defense counsel were unable to research the law themselves.

[2] Appellant was acquitted of an additional specification of violating Article 120, UCMJ (sexual assault), and one specification of communicating a threat in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012).

discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and sentence, *United States v. Warda*, No. ARMY 20200644, 2022 CCA LEXIS 438, at *9, 2022 WL 2951949, at *4 (A. Ct. Crim. App. July 21, 2022) (unpublished), and Appellant filed a timely appeal with this Court.

We granted review in this case to determine two issues:

> I. Whether the military judge abused his discretion in denying the motion to dismiss or abate the proceedings where the unavailable evidence was of such central importance that it was essential to a fair trial, there was no adequate substitute for the unavailable evidence, the unavailable evidence was not Appellant's fault, and the military judge varied from the prescribed remedy under [Rule for Courts-Martial] 703(f)(2).

> II. Whether Appellant was deprived of his right to a unanimous verdict as guaranteed by the Sixth Amendment, the Fifth Amendment's Due Process Clause, and the Fifth Amendment's right to equal protection.

*United States v. Warda*, 83 M.J. 86, 87 (C.A.A.F. 2022) (order granting review).

We hold that the military judge abused his discretion in denying Appellant's motion to dismiss or abate the proceedings pursuant to Rule for Courts-Martial (R.C.M.) 703(f)(2) (2016 ed.). Accordingly, we reverse the decision of the ACCA.[3]

## I. Background

### A. Facts

Appellant and MB met on Facebook in 2012. After communicating over various platforms for a few years, they met in person for the first time in December 2015, when Appellant and his family traveled to MB's home in Amman,

---

[3] Issue II was not argued or briefed, as it was held as a trailer to *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023). Based upon the decision in *Anderson*, we hold that Appellant was not deprived of the right to a unanimous verdict.

Jordan, to ask her family for permission to marry MB. They were married in a Sharia Court in Jordan on December 15, 2015. Afterwards, MB remained in Jordan while Appellant returned to the United States.

In the spring of 2017, Appellant and MB argued over the phone and Appellant orally divorced her by talak, the Islamic term for "divorce."[4] MB testified that after three oral talaks, a divorce is final and cannot be revoked. Appellant's brother AF elaborated:

> The way that you execute that divorce is orally, so you just say, "I renounce you." It could be over text message, over the phone, it could be in person, and if you do it three times that's the final divorce. Afterwards, you could [sic] that administrative paperwork, but once you say the word it's an effective divorce.

Appellant revoked the first talak, and in May 2017, MB went to New York to obtain a Green Card.[5] Later that summer, she moved to New York to live with Appellant.

Over the next couple of months, Appellant announced two more talaks. AF testified that when he spoke to MB after the third and final talak in September 2017, MB told him that she wanted citizenship and the dowry she had been promised. AF testified that when he told her he could

---

[4] *See Merriam Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/talak (last visited Sept. 26, 2023) (defining "talak" as "a Muslim divorce that is effected by the simple act of the husband's rejecting the wife").

[5] A Permanent Resident Card, commonly known as a Green Card, provides proof of permanent resident status in the United States and is valid for up to ten years. A conditional resident's Green Card is valid for two years. A conditional resident must petition to remove the conditions before the two-year term expires; failure to petition before the Green Card expires may result in loss of permanent resident status. U.S. Citizenship and Immigration Services, *Tools, How Do I Guides, Permanent Residents*, https://www.uscis.gov/sites/default/files/document/guides/B2en.pdf (last visited Sept. 26, 2023). MB acknowledged that she came to the United States in 2017 on a conditional Green Card, which expired two years later, in 2019.

not deliver either of those things, she replied, "You will see what I am going to do and you will regret it."

In October 2017, MB reported to civilian law enforcement that Appellant had forced her to have sex on more than one occasion, including in August 2017, which is the incident at issue in this case. She sought a temporary protective order against him, and in February 2018, she obtained a long-term protective order. Their divorce was finalized in April 2018. MB's Green Card expired in May 2019, but she remained in the United States. In March 2020, she took a job as an administrative assistant with a nonprofit organization that provides immigration services. By the time she testified in September 2020, she had been living in the United States for three years, where she worked and attended college, and she had made several trips to Jordan to visit her family.

## B. Procedural Background

On May 17, 2019, the defense submitted a supplemental discovery request for:

> documentation of [MB's] immigration status in the United States, including any requests, petitions, affidavits, applications, or other paperwork pending or submitted by her, or on her behalf by a third party, to the U.S. Customs and Immigration Service (USCIS), National Visa Center (NVC), Consular Electronic Application Center (CEAC), U.S. State Department, or other government entity, for a visa (non-immigrant or immigrant), permanent resident card (Green [C]ard), or other class of authorization to enter or remain in the United States.

Four days later, on May 21, 2019, the defense submitted another supplemental discovery request asking whether MB had ever requested an I-918 Supplement B certification, and if so, requesting a copy of the relevant documents. An I-918 Supplement B certification affords temporary immigration benefits to an alien who is a victim of qualifying criminal activity, such as sexual assault.[6] In a subsequent

---

[6] *See* U.S. Citizenship and Immigration Services, I-918, Petition for U Nonimmigrant Status, https://www.uscis.gov/I-918 (last visited Sept. 26, 2023).

motion to compel the requested records, the defense argued that in a case that would likely turn on the credibility of the complaining witness, evidence concerning the timing and nature of any changes to her immigration status, including her ability to remain in the United States without Appellant's sponsorship, "presents a possible motive to fabricate that the Defense must explore."

In June 2019, the Government sent a subpoena to the United States Department of Homeland Security (DHS) seeking the documentation requested by the defense. USCIS responded to the subpoena, refusing to produce the documents or to confirm the existence of any such records pertaining to MB. USCIS stated that if the requested records exist, they would be maintained in the subject's DHS Alien File (A-File).[7] However, any such records relating to a lawful permanent resident or United States citizen are protected from disclosure under the Privacy Act of 1974, as amended, 5 U.S.C. § 552a, absent the subject's consent or unless authorized by one of the Privacy Act's exceptions.

With respect to the request for documentation related to an I-918 Supplement B certification, USCIS stated that disclosure is specifically prohibited by 8 U.S.C. § 1367(a)(2), which prohibits disclosure of information relating to any noncitizen who is seeking or has been approved for immigrant status as, inter alia, a battered spouse under the Violence Against Women Act (VAWA), 8 U.S.C. § 1154(a)(1)(A)(iii).[8] In response to further inquiry,

---

[7] "The government creates an A-File, short for Alien File, for every non-citizen who comes into contact with a U.S. immigration agency. A-Files contain documents relating to any and all interactions which the non-citizen has had with immigration agencies." *Am. Civil Liberties Union Immigrants' Rts. Project v. U.S. Immigr. & Customs Enforcement*, 58 F.4th 643, 647 n.2 (2d Cir. 2023) (internal quotation marks omitted) (quoting *United States v. Noria*, 945 F.3d. 847, 850 n.5 (5th Cir. 2019)).

[8] Violence Against Women Act (VAWA) of 1994, Pub. L. No. 103-322, § 40001, 108 Stat. 1796, 1902 (enacted as Title IV of the Violent Crime Control and Law Enforcement Act of 1994); Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 817, 119 Stat. 2960, 3060 (2006); Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 810, 127 Stat. 54, 117. VAWA was

USCIS stated that it would not comply with the subpoena even if so ordered by a military judge and even if the military judge issued an order limiting access to the records, expressing doubt that a limiting order could adequately protect the confidentiality of the records.

In April 2020, the defense submitted a supplemental discovery request asking the Government to seek a waiver from MB to permit USCIS to disclose the requested records. MB declined to waive confidentiality. Without her waiver and in light of USCIS's response to the subpoena, the Government responded that it could not disclose the requested documentation, which was not in military custody or control.

In June 2020, the defense moved to dismiss the charges or prohibit the Government from calling MB as a witness or offering any of her hearsay statements into evidence due to the Government's refusal to disclose the records in violation of R.C.M. 701. In the alternative, if the records were not subject to compulsory process under R.C.M 701, the defense moved to abate the proceedings pursuant to R.C.M. 703 until MB waived confidentiality. The Government conceded the relevance of the records and requested that the military judge order USCIS to release the records, review them, and issue a limiting order preventing the defense from sharing the records or the information they contained with Appellant.

The military judge issued an order to USCIS in June 2020 to produce the requested documents relating to MB's immigration status for in camera review. The order provided that MB's address and phone number would be redacted; Appellant would be prohibited from possessing the documents; and copying and distribution of the documents would be restricted to one copy each to trial counsel, defense counsel, and future appellate defense counsel in the case. USCIS responded in a letter to the court reiterating

---

subsequently reauthorized by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, div. W, 136 Stat. 49, 840.

its position: without conceding the existence of the records, USCIS was statutorily precluded from disclosing them by the Privacy Act and the Violence Against Women Act, 8 U.S.C. § 1367.

After briefing by the parties and an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session, the military judge in September 2020 denied the defense motion to dismiss for failure to provide discovery under R.C.M. 701. The military judge found that "the Government conceded the relevance and necessity of the requested Discovery"; that USCIS "advised that it would not comply with the subpoena even if the Military Judge issued a Non-Disclosure Order"; and that Appellant "testified that he took no actions to affect the alleged victim's immigration status." However, the military judge found "[n]o evidence . . . that the alleged victim had completed an I-918, Supplement B certification."

The military judge concluded:

> The Defense has not established by a preponderance of the evidence that the requested records exist. The USCIS did not confirm that there are any responsive records. But even if the records exist, they are not in the control of military authorities. Further, the Government went to considerable efforts to attempt to obtain these records for the defense that are not in its own control.
>
> . . . Accordingly, the Defense Motion to Dismiss is denied.

The defense moved for reconsideration of the ruling, emphasizing that Appellant sought not only records relating to claims of abuse, but also records relating to MB's immigration status. And the defense reiterated the argument that if such records were unavailable the court should grant a continuance or abate the proceedings in accordance with R.C.M. 703. After questioning the defense about why the evidence was of central importance and why "strenuous cross-examination" of MB would not be an adequate substitute, the military judge denied the motion from the bench, adding that that the court would grant the defense "substantial leeway on cross-examination" of MB.

During the findings portion of the court-martial, the Government called MB as its first witness. At the end of her direct examination, trial counsel asked MB, "[I]f you did not get married to Sergeant Warda would you have come to the United States?" She responded, "Well, I had a great life in Jordan, I had a good job, all my family, my friends, so no."

After MB's direct examination, the defense moved "under R.C.M. 914 and the Jen[c]ks Act for any statements in the possession of the United States relating to the witnesses [sic] testimony, this being [MB], and specifically referencing the immigration records that we requested under 701 and 703." The defense argued:

> [MB] obviously has stayed here in the United States for some period of time after her marriage to Sergeant Warda. So, she either has a legal status unrelated to Sergeant Warda, which would tend to cut against this notion that she has only came to the United States and left her great life in Jordan because of Sergeant Warda, or she's here because she filed, as we believe she did, some claim for relief based on the fact that she was a battered spouse, which would be directly related to the core of these issues, and directly related to our 701 and 703 prior production request.

The military judge denied the motion, finding that "[t]here has been no meaningful testimony regarding her immigration status that would require these records be turned over."

On cross-examination, MB testified that she was willing to allow the prosecution and the military judge to see her immigration records. However, "some people from immigration" had advised her that Appellant would have unfettered access to her records if she consented to their disclosure. Based on this advice, she refused to provide access "because it's all documented, my new address and my new information," and she did not want Appellant to have that information.

The defense attempted to cross-examine MB about why she did not want Appellant to see her immigration records, asking her several times, in different ways, whether she

was aware of "[a]n immigration rule that allows you to apply for a [G]reen [C]ard without your husband . . . . if you're the victim of abuse." She repeatedly thwarted the questions, insisting, "I'm not an expert on this, I don't know." And when asked, "So, your testimony is that you don't know? Because you're not experienced at this?," she replied, "No." After the defense rested, the military judge's order to USCIS to produce the records was admitted into evidence.

### C. The ACCA Decision

On appeal, the ACCA held that the military judge did not abuse his discretion by denying the defense motion to dismiss or abate the proceedings. *Warda*, 2022 CCA LEXIS 438, at *9, 2022 WL 2951949, at *4. The ACCA noted that the Government "dutifully conceded at the outset that MB's immigration records were relevant and necessary and acted to secure them by issuing a subpoena to the Department of Homeland Security." *Id.* at *6-7, 2022 WL 2951949, at *3. While neither the subpoena nor the subsequent court order successfully produced the records, the ACCA "commend[ed] the trial judge for adhering to the procedures of R.C.M. 703(f)(2) and endors[ed] his approach to this difficult scenario." *Id.* at *7, 2022 WL 2951949, at *3. According to the ACCA:

> The military judge, in a three-page written ruling, correctly made the required and sequential findings. First, he found that [A]ppellant had not met his burden to show that the records sought, records of a claim of abuse, existed. . . .
>
> Second, the judge correctly found that the records, if they existed, were not in control of the military authorities but were instead in the control of the USCIS. Next, he found that they were not subject to compulsory process . . . .
>
> [And finally,] the judge found that the records were not of such central importance to a fair trial that, absent an adequate substitute for the evidence, a continuance or abatement was necessary.

*Id.* at *7-8, 2022 WL 2951949, at *3. The ACCA concluded:

> [T]his is a case where the government upheld its production obligations and the judge crafted an

appropriate solution to a difficult problem. His factual findings were supported by the record and were not clearly erroneous. He applied the provisions of R.C.M. 703(f)(2) and articulated his analysis in a written ruling, and his decision not to continue or abate the proceedings was not an abuse of discretion.

*Id.* at \*9, 2022 WL 2951949, at \*4. As set forth below, we disagree.

## II. Discussion

The military judge's three-page written ruling was limited to an analysis under R.C.M. 701 of the defense request for records of any I-918 Supplement B certification. The military judge did not make any findings of fact with respect to the broader defense request for documentation concerning MB's immigration status. Moreover, although the military judge questioned the defense about elements of the R.C.M. 703 analysis before denying reconsideration of the ruling, he did not make findings of fact and did not articulate, on the record or in writing, his analysis or conclusions with respect to the defense's alternative request to abate the proceedings under R.C.M. 703. We hold that under the circumstances of this case, the military judge abused his discretion in failing to abate proceedings under R.C.M. 703. Accordingly, we reverse the decision of the ACCA.

### A. Standard of Review

"A military judge's failure to abate proceedings is reviewed for an abuse of discretion." *United States v. Simmermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015) (citing *United States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001)). "The abuse of discretion standard calls for more than a mere difference of opinion," but instead occurs when the military judge's "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015) (citations omitted) (internal quotation marks omitted). Absent clear error, we are bound by the military judge's findings of fact. *Id.*

**B. Applicable Law**

Article 46(a), UCMJ, 10 U.S.C. § 846(a) (2012 & Supp. II 2013-2015), provides that, "[t]he counsel for the Government, the counsel for the accused, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." Article 46, UCMJ, has been primarily implemented through R.C.M. 701, governing discovery, and R.C.M. 703, governing production of witnesses and evidence. These two rules form the basis for the defense motion to dismiss or abate proceedings that is at issue here.

**1. R.C.M. 701**

R.C.M. 701(a)(2) (2016 ed.) provides, in pertinent part, that trial counsel shall, upon defense request, permit the defense to inspect documents "within the possession, custody, or control of military authorities . . . which are material to the preparation of the defense." The military judge found no evidence that MB filed an I-918 Supplement B certification, concluded that the requested records do not exist,[9] and added that "even if the records exist, they are not in the control of military authorities."

The parties do not dispute the military judge's finding that the requested records are not in the control of military authorities and do not challenge his conclusion that the records are, therefore, not subject to discovery under R.C.M. 701. Therefore, we assume without deciding that the military judge did not err to the extent he denied the

---

[9] In concluding that Appellant "has not established by a preponderance of the evidence that the requested records exist," the military judge conflated the two supplemental discovery requests, one of which requested documentation of MB's immigration status and the other which sought documentation of any request for an I-918 Supplement B certification. Although he found no evidence of the latter, he made no findings as to whether there existed any documentation concerning her immigration status—the subject of the first supplemental discovery request. As we discuss below, there was substantial evidence indicating the existence of documentation concerning her immigration status. Therefore, we reject the military judge's conclusion that Appellant failed to meet his burden to establish by a preponderance of the evidence that the requested records exist.

motion to dismiss pursuant to R.C.M. 701. *Compare Stellato*, 74 M.J. at 485 (holding that dismissal is an appropriate remedy for a R.C.M. 701 violation where the prosecution failed to provide evidence within its control to the defense), *with id.* at 493 (Stucky, J., concurring in the result) (concluding that "[m]ilitary authorities did not have possession, custody, or control over [the evidence] and, therefore, did not commit a discovery violation by failing to provide it to the defense"). We turn next to the defense's alternative motion to abate proceedings pursuant to R.C.M. 703.

### 2. R.C.M. 703

At the time of Appellant's court-martial, R.C.M. 703(f)(1) (2016 ed.) provided that "[e]ach party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(f)(2) (2016 ed.) provided:

> Notwithstanding subsection (f)(1) of this rule, a party is not entitled to the production of evidence, which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.[10]

The parties agree that MB's immigration records are relevant and necessary. And they agree, at least for purposes of this appeal, that MB's immigration records are not subject to compulsory process.[11] And finally, the parties

---

[10] R.C.M. 703(f) has since been moved to R.C.M. 703(e) in the 2019 edition of the *Manual for Courts-Martial, United States*; *see also* Exec. Order No. 13,825, Annex 2 § 2, 83 Fed. Reg. 9889, 9959 (Mar. 8, 2018).

[11] We note that the military judge never attempted to enforce his court order. Arguably, the requested records are subject to compulsory process. 8 U.S.C. § 1367(b) sets forth multiple exceptions for permissive disclosure. This provision was implemented in Dep't of Homeland Security, Instr. 002-02-001, Revision 00.1, Implementation of Section 1367 Information Provisions para.

agree that the unavailability of the evidence is not the fault of and could not have been prevented by Appellant. We therefore focus on the two remaining criteria for relief under R.C.M. 703: whether the evidence is of central importance to an issue that is essential to a fair trial and whether there is an adequate substitute for such evidence.

### III. Analysis

As an initial matter, the moving party under R.C.M. 703 must show that what is being requested actually exists. *See United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). The military judge concluded that Appellant failed to meet his burden to establish by a preponderance of the evidence that the requested records exist. We disagree.

During discovery and multiple times during the trial, the defense requested documentation of MB's immigration status.[12] The first supplemental discovery request broadly requested "documentation of [MB's] immigration status in the United States"—in other words, her entire A-File. *See supra* note 7. The second supplemental discovery request for documentation of any I-918 Supplement B Certification sought a narrower subset of documents in the A-File specifically related to any claim of abuse.

In its letter responses to the subpoena and to the military judge's production order, USCIS advised that the

---

VI.A.1. (issued Nov. 7, 2013, and incorporating change 1 on May 28, 2019), which recognizes statutory exceptions under 8 U.S.C. § 1367 that "allow[] for disclosure of protected information in limited circumstances" and acknowledges nonstatutory exceptions in "instances in which disclosure of protected information is mandated by court order or constitutional requirements." Indeed, the Government conceded in response to the defense motion to dismiss or abate proceedings that disclosure may have been authorized under one of the statutory exceptions enumerated in 8 U.S.C. § 1367(b).

[12] The defense made these requests in a May 17, 2019, email discovery request; June 10, 2019, motion to compel; April 27, 2020, discovery request; July 16, 2020, argument on the motion to dismiss or abate proceedings; September 29, 2020, argument on reconsideration; and September 30, 2020, request under R.C.M. 914 and the Jencks Act.

requested records, if they exist, would be maintained in an A-File and cited 82 Fed. Reg. 43,556, which provides that "[t]he purpose of the A-File is to document and maintain the official record of an individual's immigration applications, petitions, and requests, as well as enforcement transactions as he or she passes through the U.S. immigration process." 82 Fed. Reg. 43,556, 43,559 (Sept. 18, 2017).

During argument on the motion and request for reconsideration, the Government focused on immigration records involving claims of abuse—the VAWA or I-918 records. However, the defense consistently argued that it also sought the broader category of immigration records—the A-File—and repeatedly asked the military judge to abate the proceedings if he determined that the records were not subject to compulsory process.

Notwithstanding USCIS's refusal to admit or deny its existence, there is ample evidence in the record of MB's contact with U.S. immigration agencies, which supports the conclusion that an A-File for MB existed: (1) MB and AF testified that MB travelled to New York from Jordan in May 2017 to obtain a Green Card; (2) after obtaining her Green Card, MB came to the United States to live with Appellant, her husband; (3) this Green Card expired in May 2019, two years from the date of issuance; (4) MB testified that Appellant threatened to have her Green Card canceled and have her deported; (5) MB continued to reside in the United States after her Green Card expired; (6) at the time of trial, MB was a college student and was employed by a nonprofit organization that provides immigration services; (7) MB made multiple trips to Jordan to visit her family; and (8) MB did not object to the military judge and prosecution seeing her file, but she would not consent to disclose it because "some people from immigration" advised her that Appellant would then have access to information it contained. These facts demonstrate that MB came into contact with immigration services and generated an A-File no later than 2017, and she would have had further contacts in 2019 to adjust her status after her Green Card expired in order to legally remain in the United States.

Despite the defense's repeated requests for any documentation concerning MB's immigration status—whether

it reflected a claim of abuse or not—to challenge her credibility, the military judge failed to distinguish the two supplemental discovery requests. His finding that there was no evidence that the I-918 records existed was not clearly erroneous.[13] But the military judge did not make any findings as to whether an A-File for MB existed. In light of the evidence of MB's contacts with United States immigration services, the military judge's conclusion that the defense failed to establish by a preponderance of the evidence that *any* "documentation of [MB's] immigration status in the United States" existed is "outside the range of choices reasonably arising from the applicable facts and the law." *Stellato*, 74 M.J. at 482. And this error, coupled with the military judge's conclusion that any such records, if they exist, are not in control of military authorities for purposes of R.C.M. 701, dovetailed into a failure to conduct a complete R.C.M. 703 analysis on the defense's alternative request to abate proceedings under R.C.M. 703.

## A. Central Importance

A party seeking relief under R.C.M.703(f)(2) (2016 ed.) must show that the unavailable evidence is essential to a fair trial. *Simmermacher*, 74 M.J. at 199. In *Simmermacher,* the seminal case interpreting R.C.M.

---

[13] "A finding of fact is clearly erroneous when there is no evidence to support the finding, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018) (citations omitted) (internal quotation marks omitted). In this case, the evidence permits a reasonable *inference* that MB filed an I-918 Supplement B certification: AF testified that MB threatened to take unspecified action if AF and Appellant did not provide citizenship; she subsequently reported that Appellant sexually assaulted her during the marriage; and MB testified that she obtained temporary and permanent protective orders against Appellant after she accused him of sexually assaulting her and threatening to hurt her, kick her out of the house, and have her deported. However, there was no *direct* evidence that she filed an I-918 Supplement B certification. Under those circumstances, we conclude that the military judge's finding that there was no evidence that such records exist was not clearly erroneous.

703(f)(2), the accused moved to suppress urinalysis results for a urine sample that was destroyed prior to referral of charges including wrongful use of cocaine, thereby denying the defense the opportunity to retest the evidence. 74 M.J. at 198. This Court found that the destroyed evidence was of central importance to the case because it was the sole evidence of the accused's drug use, she denied using cocaine and had no explanation for the positive test result, and the level of metabolites in the sample was close to the legal cutoff. *Id.* at 201-02. After finding that there was no adequate substitute for the evidence, its unavailability was not the fault of the accused, and a continuance or other relief would not produce the missing evidence, this Court held that the military judge abused his discretion by failing to abate the proceedings under R.C.M.703(f)(2). *Id.*

In this case, the evidence in question is not the "sole evidence" of the offense, *id.* at 201, but rather, it relates to the credibility of the complaining witness. In the motion to dismiss or abate proceedings, the defense argued that because MB was the sole Government witness:[14]

> [T]he Government's case rises and falls on the credibility of [MB]. Her credibility is really the only matter at issue in this case. There were no eye witnesses to the events, the only witness that can establish the fact necessary to sustain a conviction would be [MB], if she is to be believed. [MB]'s participation in the immigration system is a significant motive for her to fabricate these allegations and is one that the fact-finder would need to consider when deciding whether they believe [MB]'s testimony or whether they believe there is a reasonable doubt based on cross[-]examination and/or any case put on by the Defense illustrating [MB]'s motive to fabricate. [MB]'s credibility is *the* matter of central importance in this case and failing to produce this information prevents the Defense from effectively attacking [MB]'s credibility

---

[14] After MB testified, the Government called MB's victim advocate to testify to prior consistent statements MB made in a law enforcement interview in 2017, arguing that the defense opened the door by questioning her motive to fabricate.

and would result in the fact[-]finder receiving an
incomplete picture of the evidence.

According to the defense, the requested immigration
records could reveal one of two outcomes relevant to this
case: either MB continued her resident status by claiming
she was battered or she did not. If she claimed abuse, the
evidence would support her motive to fabricate because
claiming she was a victim of a sexual assault would provide
a way to continue her legal residency in the United States
without assistance from Appellant after her divorce. If she
did not claim abuse, the evidence would undermine the
credibility of her sexual assault allegations in this case,
and the defense could cross-examine her on the prior incon-
sistent statement. Furthermore, if she sought resident sta-
tus on some other ground, the evidence would undermine
the credibility of her assertion that the sole reason she im-
migrated to the United States was to be with her husband,
when she was otherwise happy to remain in Jordan. In
sum, as the defense argued, "[T]his evidence is of central
importance because it is [MB]'s motive to fabricate in this
case. Her immigration status is the central [tenet] of the
defense theme in this case . . . ."

To the military judge's suggestion that that evidence of
a battered spouse claim could "cut[] both ways," the defense
responded by acknowledging, "[p]otentially," but contends
to this Court that "that does not negate the materiality of
the evidence." In other words, the defense theory was that
the evidence in question would be exculpatory regardless
of what it revealed, even if the evidence could also provide
the Government with useful, prior consistent statements.[15]
The military judge made no findings of fact and drew no
conclusions—beyond the erroneous conclusion that Appel-
lant failed to meet his burden to establish that such records

---

[15] Unavailable evidence is of central importance to impeach-
ing a witness if it is clearly exculpatory. *See United States v.
Baas,* No. NMCCA 201700318, 2019 CCA LEXIS 173, at *25,
2019 WL 1601912, at *9 (N-M. Ct. Crim. App. Apr. 15, 2019)
(unpublished) ("Military courts have long recognized that evi-
dence that is 'clearly exculpatory' is of central importance to an
issue that is essential to a fair trial.").

exist—to undermine the defense's theory that this evidence was exculpatory.

In this case, MB alleged that she was the victim of domestic violence when she was present in the United States on a conditional Green Card. The Government's case rested almost entirely on her testimony: there were no eyewitnesses, no medical evidence, no law enforcement reports or testimony admitted into evidence, and no forensic evidence. Appellant asserted that she fabricated the allegations in order to be able to remain in the United States after he divorced her. During the court-martial, MB denied knowing that if she claimed spousal abuse she could remain in the United States. When the defense motion to compel failed to produce even an acknowledgment of the existence of her immigration records, Appellant had no reasonable means to verify or refute her testimony.

In cases such as this one, where there is no substantial evidence supporting the complaining witness's allegation of domestic abuse, the credibility of the complaining witness is of central importance. *See United States v. Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013) (concluding where the victim's testimony was critical to the government's case and the defense theory was that she fabricated at least some allegations against the accused, that "the credibility of the putative victim [wa]s of paramount importance" and evidence of her motive to fabricate "might cause members to have a significantly different view of her credibility"). Thus, the accused in such a case has a vital interest in being able to obtain evidence that could be used to impeach the complaining witness's testimony at trial, thereby undermining her overall credibility.

We conclude that the defense established that evidence concerning MB's immigration status was of central importance to her credibility, the central issue in this case. By repeatedly denying knowledge that she could claim spousal abuse and thereby extend her Green Card, MB implicitly denied having done exactly that—while also preventing the defense from obtaining the records, thereby thwarting effective cross-examination as to her motive to fabricate the allegations.

**B. Adequate Substitute**

Next, we must determine whether "substantial leeway" on cross-examination was an adequate substitute for MB's immigration records. In determining whether there is an adequate substitute for unavailable evidence, courts have looked to whether there is a "comparable substitute[]," *United States v. Jones*, No. NMCCA 201700018, 2018 CCA LEXIS 60, at *7, 2018 WL 773909, at *3 (N-M. Ct. Crim. App. Feb. 8, 2018) (unpublished), or "substantially similar information," *United States v. Rothe*, No. ACM 39817, 2021 CCA LEXIS 117, at *18, 2021 WL 1115869, at *6 (A.F. Ct. Crim. App. Mar. 24, 2021) (unpublished). The military judge in this case provided neither.

"Whether an adequate substitute exists for lost or destroyed evidence depends upon the purpose of the evidence." *Rothe*, 2021 CCA LEXIS 117, at *17, 2021 WL 1115869, at *6; *see, e.g.*, *Simmermacher*, 74 M.J. at 202 (explaining that the lab report offered as a substitute for a missing urine sample was insufficient where the defense sought the urine sample for retesting; the report, unlike the sample, could not be retested to challenge the accuracy of the urinalysis test result).

The defense purpose in requesting MB's A-File was to impeach her credibility and show a motive to fabricate. *See Warda*, 2022 CCA LEXIS 438, at *5-6, 2022 WL 2951949, at *3 (noting that the defense sought the records to bolster "[t]he defense theory relevant to the motive to fabricate . . . that MB alleged she was a victim of violence by [A]ppellant to secure continued immigration benefits"). The military judge did not make any findings concerning the availability or adequacy of alternatives to producing the A-File.

We conclude that affording the defense substantial leeway in cross-examination was an inadequate substitute for the A-File because—just as they anticipated—the defense was unable to impeach MB's testimony that she only came to the United States to be with her husband, and she did not know that she could extend her stay if she alleged domestic abuse. Not only were they "stuck" with her answers, but also, the defense could not introduce evidence of her motive to fabricate—specifically, evidence of the basis for

her continued residence in the United States after her Green Card expired.

We are unpersuaded by the ACCA's assertion that the remedy of a strenuous cross-examination was strengthened by the admission into evidence of the military judge's order to USCIS to produce the requested documents, to corroborate the defense theory. *Warda*, 2022 CCA LEXIS 438, at *9, 2022 WL 2951949, at *3. The defense cross-examined MB at length about her knowledge of the military judge's order, including measures protecting her personal information such as her address and phone number. She steadfastly denied having read or understood the protective measures, despite having a Special Victims' Counsel who explained them to her, insisting, "I don't know about this."

A military judge has broad discretion in determining whether an adequate substitute exists. *Simmermacher*, 74 M.J. at 202. However, the military judge in this case did not grapple with the defense request for MB's entire A-File or acknowledge that MB placed it squarely in issue by denying that she knew she could claim spousal abuse in order to extend her legal residency in the United States. We conclude, in the context of this case resting almost entirely on the complaining witness's testimony, where she effectively denied having claimed spousal abuse to adjust her immigration status, that wide latitude on cross-examination was insufficient to remedy the unavailability of immigration records that would have allowed the defense to test her credibility.

## C. Remedy

"If a continuance or other relief cannot produce the missing evidence, the remaining remedy for a violation of R.C.M. 703 (f)(2) is abatement of the proceedings." *Simmermacher*, 74 M.J. at 201; *see also* R.C.M. 703(f)(2) (2016 ed.). We conclude that Appellant has satisfied the criteria set forth in R.C.M. 703(f)(2) (2016 ed.) and therefore hold that the military judge abused his discretion when he failed to abate the proceedings.

## IV. Conclusion

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set

aside, and the Charge and Specification are dismissed without prejudice. The record is returned to the Judge Advocate General of the Army. A rehearing is authorized.

Chief Judge OHLSON, with whom Judge HARDY joins, concurring.

I join the Court's well-reasoned opinion in full. I write separately simply to explore some practical aspects of this issue because of the high probability that similar cases will arise in the future.

In cases such as this one, a trial court is confronted with the need to delicately balance competing interests. On the one hand, victims of domestic violence have a vital interest in ensuring that their abusers do not gain access to their personal information—such as their current home address—which may be contained in government files. On the other hand, servicemembers who are accused of domestic violence have a vital interest in ensuring that they have access to information in government files that may significantly undermine the credibility of the complaining witness in the eyes of the trier of fact. As reflected below, I believe it is possible for a military judge to protect both of these interests simultaneously.

To be clear at the outset, only a limited subset of domestic violence cases is at issue here. Specifically, this opinion pertains solely to those cases where: (1) a servicemember is accused of committing sexual assault or other crimes of domestic violence against a spouse who is not a United States citizen and who is present in this country on a conditional resident Green Card; (2) the accused servicemember asserts that the complaining witness fabricated the charges in order to be able to remain in this country on the grounds that he or she is an abused spouse; (3) the complaining witness testifies during court-martial proceedings that he or she did *not* file with United States Citizenship and Immigration Services (USCIS) to remain in this country on the grounds that he or she was an abused spouse; (4) the accused has no reasonable means of verifying or refuting the complaining witness's testimony on this point other than by obtaining relevant information from USCIS; and (5) the accused files a timely motion with the trial court to obtain that information.

Particularly in those instances where there is no substantial independent evidence supporting the domestic

violence allegations other than the complaining witness's testimony, the credibility of the complaining witness is of central importance to the case. Therefore, I suggest that the military judge order USCIS to file with the trial court—for in camera review under a protective order—the least intrusive document in the complaining witness's Alien File that would be responsive to the limited, binary question of whether or not the complaining witness sought to continue his or her presence in this country by claiming to be an abused spouse (i.e., by filing a Form I-918, Petition for U Nonimmigrant Status). If necessary, the military judge could then continue the proceedings to provide time for USCIS to respond, and thereafter if USCIS indicates that it is unable or unwilling to comply, abate the proceedings in accordance with Rule for Courts-Martial 703 until USCIS complies with the court order.[1] (In the alternative, the complaining witness and his or her special victim's counsel or victim's legal counsel could obtain the information from USCIS—preferably well in advance of trial to avoid unnecessary delay—and then provide the documentation to the military judge for in camera review. *See* 8 U.S.C. § 1367(b)(4) (2018).)

If the documentation obtained from USCIS supports the complaining witness's assertion that he or she did not file to remain in this country as an abused spouse, the military judge should simply inform the parties of this response and then seal the responsive documentation.

If, however, the documentation obtained from USCIS contradicts the complaining witness's sworn testimony on this important point, the military judge should then disclose to the parties only that limited portion of the submission that would permit the defense to sufficiently

---

[1] In my view, USCIS is obligated to comply with such an order because of the limited nature of the disclosure, the beneficial effect of the military judge's protective order, and most importantly, because of the provision in the applicable statute specifically authorizing USCIS to disclose information "for a legitimate law enforcement purpose." 8 U.S.C. § 1367(b)(2) (2018). Further, I believe that if USCIS fails to comply with such an order then this matter should be raised by military officials at high levels within the executive branch.

demonstrate to the trier of fact that the complaining witness has testified falsely. (In the alternative, the government could simply stipulate to the fact that USCIS has records indicating that, contrary to the complaining witness's testimony, the alleged victim filed a Form I-918, Petition for U Nonimmigrant Status.)

I believe that the approach outlined above could serve as an effective means of protecting the privacy rights of victims of domestic violence while at the same time protecting the constitutional rights of accused servicemembers.

Judge MAGGS, dissenting.

When the Government was unable to produce immigration records that might contain evidence relevant to his defense, Appellant asked the military judge either to dismiss the charges with prejudice or to abate the proceedings under Rule for Courts-Martial (R.C.M.) 703(f)(2) (2016).[1] The military judge denied this request. The Court and I agree that the principal question in this appeal is whether the military judge abused his discretion in concluding that there was an "adequate substitute" for the evidence that the immigration records might have contained. The Court answers this question in the affirmative. I reach a different conclusion. In my view, the military judge did not abuse his discretion because the remedies that the military judge provided to Appellant reasonably addressed each of the concerns that Appellant presented to the military judge. I therefore respectfully dissent and would affirm the decision of the United States Army Court of Criminal Appeals (ACCA).

## I. Background

As the Court recounts, Appellant was charged with raping MB, sexually assaulting MB, and communicating a threat to MB in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2012). Prior to trial, Appellant sought discovery of MB's immigration records. His theory was that MB might have filed a petition with the United States Citizenship and Immigration Services (USCIS) in which she sought to remain in the country after their divorce based on immigration law extending immigration benefits to battered spouses or victims of domestic abuse. According to Appellant, the existence of such a petition might support an inference that MB had alternative motives for accusing Appellant of rape and assault—namely, such allegations might help MB to remain in the United States.[2]

---

[1] R.C.M. 703(f) has since been moved to R.C.M. 703(e). *See* Exec. Order No. 13,825, Annex 2, § 2, 83 Fed. Reg. 9889, 9959 (Mar. 8, 2018).

[2] Appellant did not argue before the military judge, and does not argue on appeal, that the absence of a petition for battered

When Appellant's efforts to obtain the records from immigration authorities proved unsuccessful, he moved for dismissal of the charges or abatement of the proceedings under R.C.M. 703(f)(1), which provides that "[e]ach party is entitled to the production of evidence which is relevant and necessary." But if relevant and necessary evidence is unavailable, R.C.M. 703(f)(2) provides:

> (2) *Unavailable evidence.* Notwithstanding subsection (f)(1) of this rule, a party is not entitled to the production of evidence which is destroyed, lost, or otherwise not subject to compulsory process. However, if such evidence is of such central importance to an issue that it is essential to a fair trial, and if there is no adequate substitute for such evidence, the military judge shall grant a continuance or other relief in order to attempt to produce the evidence or shall abate the proceedings, unless the unavailability of the evidence is the fault of or could have been prevented by the requesting party.

If R.C.M. 703(f)(1) and (f)(2) are read together and carefully parsed, they authorize a military judge to abate the proceedings when evidence is unavailable only if seven requirements are satisfied:

(1) "relevant and necessary" evidence at one time existed;

(2) such evidence is now "destroyed, lost, or otherwise not subject to compulsory process";[3]

(3) such evidence is "of such central importance to an issue that it is essential to a fair trial";

(4) "there is no adequate substitute for such evidence";

---

spouse immigration benefits would also be material and relevant for impeaching MB.

[3] Appellant's position in this appeal is that MB's immigration records were not subject to compulsory process. In the absence of any contrary argument by the Government, I will assume that this position is correct.

(5) "grant[ing] a continuance or other relief in order to attempt to produce the evidence" is not a sufficient measure;

(6) the "unavailability of the evidence is [not] the fault of . . . the requesting party"; and

(7) "the unavailability of the evidence . . . could [not] have been prevented by the requesting party."

If all seven requirements are satisfied, then the party seeking the evidence has a right to an abatement under R.C.M. 703(f)(2). But if one or more of these requirements is not satisfied, then the party has no right to an abatement.

The military judge denied Appellant's motion based on the first and fourth requirements listed above. Addressing the first element, the military judge concluded that Appellant had not shown by a preponderance of the evidence that the immigration records existed because the USCIS would not confirm that it existed. With respect to the fourth element, Appellant took the position that there was no adequate substitute for the evidence sought because no other evidence could convey MB's motive to fabricate her allegations. The military judge, however, was not convinced. During argument on the motion, the following exchange occurred between the military judge and defense counsel:

> MJ: Why wouldn't . . . strenuous cross-examination in these areas that she's not—that she's refused to turn over these records, why is that not an adequate substitute?

> DC: It's not an adequate substitute, Your Honor, because we don't have a way of impeaching her. She's now come up to the government and said, "I just didn't want to give [my immigration records] over because I didn't want him to have my personal information." And very likely a panel member may go, "Well sure I wouldn't want him to have my personal information either, I get that, I understand it." So, then we're stuck with whatever she says without the ability to impeach her and impeach the falseness that she is going to talk about.

MJ: . . . The Court intends to give you great lati-
tude in the scope of cross-examination, to include
the fact there was a court order that indicated
that information would be redacted.

DC: Yes, Your Honor.

And the problem with that . . . is we start to get
into some tricky situation[s.] I cross her on that,
and let's say there was a court order and she
claims that she was unaware of the court order.
And I say, "Well your SVC was on the email line."
And she says, "Well he didn't tell me."

MJ: Well we'll take that up as we get to it, I guess.

DC: We get into privilege issues, Your Honor. So,
there is no adequate substitute at this point in
time.

. . . .

MJ: . . . The Court will grant defense counsel sub-
stantial leeway on cross-examination of Ms. [MB,]
the alleged victim.

At trial, trial defense counsel rigorously cross-examined
MB, seeking to show that her allegations of abuse and
domestic violence were motivated by her desire to stay in
the country. Trial defense counsel's questions included the
following:

If you're an alleged victim of battery, domestic vi-
olence, cruelty[,] that's a potential way for you to
stay in the country, right?

. . . .

[Y]ou were made aware that in this case the de-
fense, we, had asked for your immigration records,
correct?

. . . .

And you were aware too that the government
agreed that those records should be produced,
right?

. . . .

And that we actually got an order for the military
judge, correct?

. . . .

> Now, you told the government a few days ago that
> you did not allow them to get the records because
> you were afraid about Sergeant Warda getting
> your personal information, right?

In response, MB asserted that she refused to consent to
the production of her records because she "had understood
that [Appellant] will get a copy forever and know every-
thing about me where I live, where I work, everything." At
that point, trial defense counsel moved for admission of the
military judge's protective order. The military judge did not
immediately admit the order but allowed trial defense
counsel to show it to MB and read from it. In response to
further questioning, MB did not deny having seen the court
order, but she denied having read the military judge's order
or having understood it.

## II. Standards of Review

A military judge's decision not to abate proceedings is
reviewed for an abuse of discretion. *United States v. Sim-
mermacher*, 74 M.J. 196, 199 (C.A.A.F. 2015) (citing *United
States v. Ivey*, 55 M.J. 251, 256 (C.A.A.F. 2001)).

## III. Analysis

As explained above, the military judge denied Appel-
lant's motion to dismiss the charges or abate the proceed-
ings on the grounds that two requirements of R.C.M. 703(f)
were not met: Appellant had not proven that the immigra-
tion records existed, and there was an adequate substitute
for the evidence. I address each point in turn.

### A. Existence of the Immigration Records

In concluding that Appellant had not established by a
preponderance of the evidence that the immigration rec-
ords existed, the military judge cited the refusal of the
USCIS to confirm the existence of immigration records for
MB. The ACCA determined that the military judge's find-
ing of fact was not clearly erroneous. If the records do not
exist, then the Government has no duty to provide them to
Appellant under R.C.M. 703(f), and Appellant is not

entitled to abatement. I am reluctant, however, to rely on this reasoning in deciding this case.

In the absence of contrary evidence, "a presumption of regularity attaches to the actions of Government agencies." *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001). Accordingly, if immigration law *required* the USCIS to create and maintain immigration records for MB, then the military judge should have presumed that the records did exist even if the USCIS would not confirm their existence. *See United States v. Engle*, 3 C.M.A. 41, 46, 11 C.M.R. 41, 46 (C.M.A. 1953). But in this case neither the military judge nor the ACCA addressed the requirements of immigration law in any depth, and the parties have not adequately addressed it in their briefs. Nor did the military judge explain whether his findings on "requested records" meant all of MB's immigration records or only records regarding a petition for immigration status as a battered spouse or victim of domestic violence. Under these circumstances, I will assume that the relevant immigration records did exist, and I will focus my analysis on the question of whether there were adequate substitutes for the requested immigration records.

B. Adequate Substitutes for the Immigration Records

If the trial is not abated when evidence that may be exculpatory is unavailable, "the trial judge may fashion such remedies as are appropriate to protect the fundamental rights of the accused," with the "[d]etermination of an appropriate remedy . . . left to the sound discretion of the trial judge." *United States v. Kern*, 22 M.J. 49, 52 (C.M.A. 1986) (citing *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (Kennedy, J., concurring)).

A military judge does not abuse his discretion in crafting a remedy for missing evidence if the military judge adequately addresses the legitimate concerns of the accused. In *Kern*, the government charged the accused with stealing military property worth $2,647.72. *Id.* at 50. The accused sought a dismissal of the charge because the government was unable to produce the property but instead could

produce only photographs of it. *Id.* at 50, 52. The military judge reasoned that "the Government's inability to produce the property did not affect appellant's ability to present a defense to the theft but it did affect his ability to defend regarding the value of the property." *Id.* at 50. To address this concern, the judge amended the charge sheet by changing the value of the property from "$2,647.72" to "some value." *Id.* This Court concluded that the military judge's action was not an abuse of discretion, explaining:

> Although there might have been some benefit in having the property in question at the trial in order to clearly establish its condition and value, the military judge did reduce the alleged value of the property, a remedy which certainly protected the rights of the accused; thus, appellant was not harmed by the Government's inability to produce that property.

*Id.* at 52.

In the present case, as shown in the portions of the record quoted above, trial defense counsel raised several specific concerns during oral argument on Appellant's motion to abate the proceedings. In my view, the military judge recognized the validity of Appellant's stated concerns and addressed each of them with reasonable measures.

Appellant's first concern was that MB would explain away her reluctance to turn over the immigration records on the ground that she did not want Appellant to see her personal information—a concern that the panel members might see as reasonable under the circumstances. The military judge reasonably addressed this concern by allowing trial defense counsel to confront MB with the protective order that required MB's personal information to be redacted. At trial, when MB did in fact testify that she was afraid Appellant would receive all of her personal information, the military judge allowed trial counsel to confront her with the order.

Appellant's second concern was that MB would deny that she was aware of the court order. As shown above, the military judge promised to "take that up as we get to it."

But there was ultimately no need to address this concern because MB confirmed that she was aware of the order.

Appellant's third concern was that MB would claim attorney-client privilege or some other privilege, which would thwart effective cross-examination by precluding Appellant from effectively undermining MB's credibility. The military judge responded that he would allow extensive cross-examination to address this concern. In the end, MB did not claim any privilege.

On appeal, Appellant argues that "substantial leeway on cross-examination" at trial turned out not to be an adequate substitute for the immigration records because Appellant could not "impeach [MB's] repeated denials regarding her knowledge of the victim-based application process" for immigration benefits "[w]ithout the actual records." However, as a plurality of the Supreme Court has explained—though in a different context—"[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987) (plurality opinion). "Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id.*

Trial defense counsel's cross-examination of MB resulted in testimony bearing on her credibility and her alleged motive to testify falsely. For example, when confronted with a restraining order, which stated that she might be killed if she returned to Jordan, MB acknowledged the restraining order but denied ever making that specific claim. She also denied that being "an alleged victim of battery, domestic violence, [or] cruelty" was "a potential way for [her] to stay in the country," even though she testified that she worked for a nonprofit that provided "legal consultations for immigration services." And MB never provided an explanation for how she had remained in the United States despite acknowledging that she had originally immigrated with "a conditional green card" that "would have expired in 2019." Finally, when questioned

about her refusal to allow the USCIS to release her immigration records to trial defense counsel, even after the military judge had issued the protective order, MB claimed she had been advised that, if she released the file, Appellant "will know everything and he will [have] the file forever, even if [she] changed [her] address." She further claimed that she did not understand or did not know that the military judge's order required her personal information to be redacted and that the military judge would first review her records to ensure confidentiality. Trial defense counsel was then able to confront her with the military judge's protective order, which stated that: "The Accused will not have physical or constructive possession of any protected information and the Court will redact out any information relating to [MB's] current address, city and state of residence, and/or current telephone number."

MB's testimony shows that it was reasonable for the military judge to conclude that "substantial leeway on cross-examination" was an adequate substitute for MB's immigration records. Trial defense counsel was able to use MB's answers on cross-examination to impugn her credibility and motives during closing argument.

Accordingly, the military judge reasonably addressed all of Appellant's concerns at trial. In these circumstances, the military judge did not abuse his discretion in denying the motion for abatement under R.C.M. 703(f). In the apt words of the ACCA, "the judge crafted an appropriate solution to a difficult problem." *United States v. Warda*, No. ARMY 20200644, 2022 CCA LEXIS 438, at *9, 2022 WL 2951949, at *4 (A. Ct. Crim. App. July 21, 2022) (unpublished).

## IV. Conclusion

For these reasons, I would affirm the decision of the United States Army Court of Criminal Appeals.