# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and COOPER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant EDWARD T. MCTEAR**
**United States Army, Appellant**

ARMY 20220531

Headquarters, Fort Stewart
Albert G. Courie III and Trevor I. Barna, Military Judges
Colonel Joseph M. Fairfield, Staff Judge Advocate

For Appellant: Colonel Phillip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Amber L. Bunch, JA (on brief).

For Appellee: Major Patrick S. Barr, JA; Major Chase C. Cleveland, JA; Major Kathryn M. Moryl, JA (on brief).

23 September 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

COOPER, Judge:

Appellant raises three assignments of error, one of which merits discussion but no relief.[1] At the heart of this assignment of error are three recordings which were never provided to defense counsel. Appellant alleges the government violated appellant's discovery rights by failing to provide the videos that may have contained relevant and exculpatory evidence. We disagree.

---

[1] We have reviewed the issues raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find that they do not merit relief.

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault and two specifications of abusive sexual contact, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2019) [UCMJ]. The military judge found appellant not guilty of attempted sexual assault, in violation of Article 80, UCMJ.[2] The military judge sentenced appellant to a dishonorable discharge, 24 months of confinement, reduction to the grade of E-1, and total forfeitures.

In the fall of 2020, appellant met the victim in the stairway of the apartment complex where they both lived. They developed a friendship and began hanging out a couple of times a month. On 9 January 2021, appellant invited the victim to a housewarming party at his new apartment. The victim arrived at 2200 hours and she had a couple of shots, two to three mixed drinks, a beer, and smoked marijuana. Feeling "super drunk," the victim began to get tired and sick. She vomited in the kitchen sink, and friends at the party moved her to the bathroom. She vomited again in the bathroom and appellant lifted her up from the floor and carried her into the guest bedroom. He left her in the bedroom with a glass of water and a trash can in case she threw up again.

The victim fell asleep and the next thing she remembered was appellant getting into the bed with her. She told him to go to a different bed. The victim woke up again to appellant touching her back and her buttocks. She swatted him away and told him to stop. The next thing the victim remembered was feeling (1) her pants unbuttoned and unzipped, (2) wetness in her vagina and buttocks, and (3) appellant's penis leaving her vagina. She pushed him away and ran into the bathroom. After cleaning herself up, she went to her car and called a friend for assistance. The same morning, she was examined by a Sexual Assault Nurse Examiner (SANE) at a rape crisis center.

Later that same day, a friend of the victim, ██ went to appellant's house with three to four other men. ██ confronted appellant and asked him if he raped the victim. Appellant denied it and a fight ensued between the two men. The physical altercation lasted under a minute and the group left appellant's house.

### A. Party Video

██ recorded the first video at appellant's house party hours before the sexual assault. ██ testified the video showed a "pretty intoxicated" appellant stripping to

---

[2] Following a motion from defense counsel on unreasonable multiplication of charges, the military judge conditionally dismissed the two abusive sexual contact specifications and moved forward to presentencing with the sole remaining sexual assault offense.

his underwear. This video was not provided to Criminal Investigation Division (CID) and there is no evidence either party knew about it before █'s trial testimony. Defense counsel did not object to references to this video, did not ask any questions about it on cross-examination, and did not request production of the video. There was no further reference to this video, and it was not admitted into evidence.

### B. Confrontation Video

█ recorded this video outside of appellant's house the morning after the sexual assault. █ testified:

> Me and a group of friends went to Sergeant McTear's house, went into his house, pulled him off the couch. I told him to step outside. I pulled out my phone to record and asked him – or told him that [victim] told me that he raped her.

Defense counsel asked █ about the video, and █ confirmed he deleted it right after he left appellant's house that day.

On redirect, █ clarified that appellant had no verbal responses on this video, so he stopped recording. "I asked him a couple times, 'Did you rape her? Did you rape her?' And he just kind of sat there, so I stopped recording."

As with its predecessor, apparently neither party knew about this video until █ testified. Defense counsel neither objected to this testimony nor requested production of the Confrontation Video.

### C. Fight Video

█'s friend recorded the third video outside appellant's house, capturing a fight between █ and appellant. The day before trial, █ showed this video to the trial counsel but refused to provide a copy. Trial counsel notified defense of the video the same day.

During trial, it became apparent there was confusion concerning the fact that there were two videos taken outside of appellant's home - the Confrontation Video and the Fight Video. When trial counsel asked █ about the Fight Video and █ confirmed it still existed, defense objected under the best evidence rule. During the subsequent Article 39(a), UCMJ session, the trial counsel described what he observed in the video: "the accused and the witness are fighting. There is nothing exchanged. It's clearly the accused and the witness in the video" and "nothing was even said."

The military judge subsequently determined the Fight Video was not relevant and it was never produced or admitted at trial. Defense voiced no further objections concerning the three videos during the trial. No defense discovery request appears in the record of trial and, now before this court, appellant does not point us to one.

## LAW AND DISCUSSION

The Due Process Clause of the Fifth Amendment requires the prosecution to disclose evidence that is material and favorable to the defense. *United States v. Brady*, 373 U.S. 83, 87 (1963). This is so whether there is a general discovery request from defense or no request at all. *United States v. Agurs*, 427 U.S. 97, 107 (1976). The government commits a discovery violation when it "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *United States v. Behenna,* 71 M.J. 228, 237-38 (C.A.A.F. 2012) (citing *Smith v. Cain,* 565 U.S. 73, 75 (2012)). Favorable evidence is "exculpatory, substantive evidence or evidence capable of impeaching the government's case." *Id.* at 238 (internal citations omitted). "Evidence is material when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* (*citing Smith*, 565 U.S. at 75) (internal quotations omitted). Once a *Brady* violation is established, constitutional error exists and "there is no need for further harmless-error review." *Kyles v. Whitley,* 514 U.S. 419, 435-36 (1995).

Disclosures in the military are also governed by Rule for Courts-Martial [R.C.M.] 701 "which sets forth specific requirements with respect to 'evidence favorable to the defense.'" *United States v. Williams*, 50 M.J. 436, 440 (C.A.A.F. 1999) (emphasis omitted) (internal citation omitted). R.C.M. 701(a)(6) requires trial counsel to "disclose to defense the existence of evidence known to trial counsel which reasonably tends to" negate the guilt of the accused, reduce the degree of guilt, reduce the punishment, or adversely affect the credibility of a witness or evidence.

Appellant argues the government violated appellant's rights by possessing relevant and exculpatory evidence and failing to preserve and provide it to defense. We disagree.

The government never possessed any of the three videos; ▮ possessed them all. Neither party knew about the Party Video or the Confrontation Video before trial, only the Fight Video. These facts frame the legal question: Was the government obliged to preserve, protect, and provide to defense two videos neither party knew existed before trial and/or a third video that the owner refused to provide to the government?

4

Addressing the Party Video, we find no discovery violation. First, defense never requested production of the video. Second, the government had no sua sponte duty to provide the video, as appellant has failed to demonstrate the video contained material or favorable evidence or evidence that might negate the guilt of the accused, reduce the degree of guilt, reduce the punishment, or adversely affect the credibility of a witness or evidence. Multiple witnesses at the party testified to appellant's intoxicated appearance and his act of stripping down to his underwear. Appellant now contends the video *may have* been helpful to the defense case *if* it showed the proximity of the victim to appellant during this strip show and her reaction to it. However, at trial, defense had the opportunity to cross-examine multiple witnesses who were present at the party on these very issues. This speculation on direct appeal falls short of stating a discovery violation.

We also find no discovery violation for the Confrontation Video. Neither the government nor defense knew of its existence until trial and by that time, the video was already destroyed. ███ testified he deleted the video as he left appellant's house after the confrontation. Therefore, in a situation regarding lost or destroyed evidence like this, "appellant must show the evidence possessed an exculpatory value that was or should have been apparent to the government before it was lost or destroyed." *United States v. Colbert*, 2023 CCA LEXIS 536, at *11 (Army Ct. Crim. App. 13 Dec. 2023) (mem. op.); *see also United States v. Simmermacher*, 74 M.J. 196, 198 (C.A.A.F. 2015); *Arizona v. Youngblood*, 488 U.S. 51, 58, (1988).

First, appellant has not demonstrated how this video, where he provided no verbal response to ██s allegation that he raped the victim, was exculpatory. Additionally, and most importantly, the government was unaware of the video until trial and had no opportunity to acquire it before it was deleted. Finally, ██'s trial testimony, including opportunity for cross-examination, was an adequate substitute for the video.

The remaining video, the Fight Video, is the only piece of evidence that gives us pause. During trial, defense asserted a best evidence objection,[3] although they conceded the government never possessed the video. The issue then becomes whether the government had a duty to preserve and protect the video after seeing it on JT's phone the day before trial. We believe not.

There was no sua sponte requirement for the government to produce the video, for it was neither relevant nor necessary. The video depicts a thirty second fight between appellant and ██ where no words were exchanged. The military judge determined the video was not relevant; this determination was well within the bounds of reasonable judicial discretion.

---

[3] Notably, defense did not directly allege a discovery violation by the government or request production of the video.

To the extent appellant relies on *United States v. Stellato*, 74 M.J. 473 (C.A.A.F. 2015), there are key distinctions between that case and his. First, central to *Stellato* and its holding was trial counsel's knowledge of a box containing exculpatory evidence, but failure to disclose it to defense. *Id.* at 485-86. Second, trial counsel in *Stellato* deliberately decided not to inspect or possess the box, cautioning its owner, "everything I get will go to the defense." *Id.* at 487. Here, the video contained no exculpatory evidence and trial counsel still took immediate action by requesting the owner make a copy of the video and informing defense about it the same day. This action was commendable, especially when the trial counsel was uncertain the video was even relevant.

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Senior Judge FLEMING and Judge PENLAND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

6